MILLER v. BROOKS

[123 N.C. App. 20 (1996)]

———

TERRY STUART MILLER, PLAINTIFF, v. GREGORY F. BROOKS, MICHAEL CRAIG HITE, BROOKS INVESTIGATIONS, INC., ANNETTE K. MILLER AND PIERINO "PAT" MASSARONI, DEFENDANTS

No. COA95-407

(Filed 2 July 1996)

1. **Privacy § 5 (NCI4th)— invasion of privacy by intrusion— recognition in North Carolina**

Defendants' acts of installing a hidden video camera in plaintiff's bedroom and intercepting plaintiff's mail as alleged and forecasted were sufficient to sustain plaintiff's claims for invasion of privacy by intrusion on his seclusion, solitude, or private affairs; moreover, there was no merit to defendants' assertion that the marital relationship between plaintiff and one defendant precluded plaintiff from asserting an intrusion claim, since, at the time of the intrusions, plaintiff and defendant were living sepa-

rately and had agreed that only plaintiff would live in the marital residence.

**Am Jur 2d, Privacy §§ 91, 215-219.**

2. **Trespass § 46 (NCI4th)— trespass—summary judgment inappropriate**

The trial court erred in granting summary judgment to defendants on plaintiff's trespass claim where there was abundant record evidence showing that defendants on more than one occasion intentionally entered the house in question and that plaintiff had possession at that time, and there were genuine issues of material fact as to whether defendant wife had permission to enter her husband's house and to authorize others to do so, and as to whether defendants' entries exceeded the scope of any permission given; furthermore, plaintiff's marriage to defendant did not automatically preclude his action for trespass, nor did defendant establish that she was a tenant in common with plaintiff so as to give her a right of possession.

**Am Jur 2d, Trespass §§ 215, 216.**

3. **Intentional Infliction of Mental Distress § 3 (NCI4th)— intentional infliction of emotional distress—summary judgment improper**

The trial court erred in granting summary judgment for defendants on plaintiff's claim for intentional infliction of emotional distress where a jury could reasonably find that the conduct of defendants in breaking into plaintiff's house and installing a hidden video camera was "extreme and outrageous conduct"; defendant wife knew and told the other defendants that plaintiff had a proclivity to be fearful; the record thus raised a genuine issue of fact as to whether they acted with reckless indifference to the likelihood that installation of the camera, once discovered, would cause plaintiff emotional distress; and a jury could reasonably conclude that the symptoms plaintiff suffered showed a severe and disabling emotional or mental condition.

**Am Jur 2d, Fright, Shock, and Mental Disturbance §§ 5-13.**

**Right to recover for emotional disturbance or its consequences, in the absence of impact or other actionable wrong. 64 ALR2d 100.**

MILLER v. BROOKS

[123 N.C. App. 20 (1996)]

Modern status of intentional infliction of mental distress as independent tort; "outrage". 38 ALR4th 998.

4. Trespass § 50 (NCI4th)— damages to real property incident to trespass—sufficiency of evidence

Plaintiff forecast sufficient proof to survive summary judgment on his prayer for damages to his real property incident to his trespass claim where such evidence tended to show that defendants damaged his house by altering the wiring and drilling holes in the ceiling, and plaintiff paid expenses for repairs and an electrician.

Am Jur 2d, Trespass § 175.

5. Privacy § 5 (NCI4th)— punitive damages—aggravated conduct—sufficiency of evidence

Plaintiff could properly seek punitive damages based on the intrusion tort upon proof of aggravated conduct, and the trial court erred in granting summary judgment on plaintiff's punitive damages claim, though defendants relied on the advice of counsel in ascertaining whether they had the right to enter the house, since evidence of aggravated conduct included the fact that defendants knew plaintiff had paranoid tendencies making him particularly susceptible to their intrusions; two of the defendants altered the wiring of plaintiff's house although neither was a licensed electrician; defendants placed a hidden camera in plaintiff's bedroom rather than in a less private area of the house; and defendants went back into the house even after they discovered that the camera had been removed.

Am Jur 2d, Privacy §§ 263-265.

Appeal by plaintiff from order entered 21 December 1994 by Judge W. Steven Allen in Guilford County Superior Court. Heard in the Court of Appeals 24 January 1996.

*Gabriel Berry & Weston, L.L.P., by M. Douglas Berry, for plaintiff-appellant.*

*Yates, McLamb & Weyher, L.L.P., by Andrew A. Vanore and Beth Y. Smoot, for defendants-appellees Gregory F. Brooks, Michael Craig Hite, Brooks Investigations, Inc., and Pierino "Pat" Massaroni; Dotson & Kirkman, by John W. Kirkman, Jr., for defendant-appellee Annette K. Miller.*

MILLER v. BROOKS

[123 N.C. App. 20 (1996)]

LEWIS, Judge.

Plaintiff appeals an order granting summary judgment to all defendants on all of his claims.

Evidence presented at the summary judgment hearing tends to show the following: In December 1986, plaintiff Terry Miller purchased a lot at 2400 Buck Lane. On 14 February 1987 he married defendant Annette K. Miller. The couple built a house on the Buck Lane lot and lived in it, but the property remained titled solely in plaintiff's name. On 1 August 1990, defendant Annette Miller moved out of the house and into an apartment. On 29 January 1991, the Millers entered into a separation agreement which provided that plaintiff Terry Miller had sole possession of the Buck Lane house. In February 1992, the couple attempted a reconciliation during which defendant Miller moved back into the Buck Lane residence. This reconciliation attempt failed and she moved out after a few days. Plaintiff has testified in his affidavit and in a previous criminal trial that the couple agreed that he would have exclusive possession and control of the Buck Lane house and that defendant Miller would not return unless she was invited or he was present. She returned her key.

In February 1993, defendant Annette Miller made arrangements with defendant Gregory Brooks, a private investigator with defendant Brooks Investigations, Inc., for a surveillance camera to be placed in the Buck Lane residence. Brooks hired defendants Massaroni and Hite to assist. On 5 February 1993, Brooks contacted a locksmith who met defendants Miller, Brooks, and Massaroni at the house and made a key to the house. On or about 16 or 17 February 1993, when plaintiff was not home, defendants Massaroni and Brooks entered the Buck Lane house, altered the wiring, and installed a hidden videotape camera in the bedroom ceiling.

On 17 February 1993, plaintiff returned home and discovered a pile of dust or dirt on the floor indicating that someone had been in his house. He engaged a private detective who helped him locate and remove the camera and videotape. They watched the videotape which showed pictures of plaintiff in his bedroom, getting undressed, taking a shower, and going to bed. The tape also showed defendants Brooks and Hite in plaintiff's bedroom. After discovering the camera, plaintiff became fearful for his life, moved out of his house temporarily, and carried a loaded shotgun in his car. He suspected he was being investigated by federal officials and went into hiding. Later, defendants

Miller, Massaroni, and Hite went to the house to change the videotape and discovered that the camera and tape had been removed.

In mid-February 1993, defendant Miller, representing herself as a resident, asked the local post office to hold the mail for 2400 Buck Lane. Afterwards, she regularly picked up plaintiff's mail at the post office, sorted through and discarded portions of it, and placed the remainder in plaintiff's mailbox. Defendant Massaroni picked up the mail for her once. Postal employees discovered that defendant Miller was not living at the Buck Lane house and contacted plaintiff.

Upon concluding that the defendants were involved, plaintiff filed this action on 27 July 1993 seeking a declaratory judgment and compensatory and punitive damages for invasion of privacy, intentional infliction of emotional distress, trespass, and damage to real property. On 7 April 1994, plaintiff amended his complaint adding defendant Massaroni and asserting additional claims for invasion of privacy. Defendants answered and moved to dismiss under N.C.R. Civ. P. 12(b)(6). Judge Allen heard defendants' motions to dismiss as motions for summary judgment and, on 21 December 1994, granted summary judgment to all defendants on all of plaintiff's claims.

Plaintiff has assigned error to the grant of summary judgment on his claims for invasion of privacy, trespass, damage to real property, intentional infliction of emotional distress, and a declaratory judgment. Since plaintiff has not presented argument on the dismissal of his declaratory judgment claim, this issue is abandoned on appeal. See N.C.R. App. P. 28(a) (1996).

Plaintiff alleges that defendants invaded his privacy by their intentional and highly offensive intrusion upon his seclusion, solitude, or private affairs. In his first and eighth causes of action, plaintiff asserts that defendants violated his privacy by breaking into his home, installing a hidden video camera in his bedroom, and taking pictures of him while in his bedroom. He asserts that they performed these acts wilfully, intentionally, maliciously, and in reckless disregard and indifference to his privacy rights. In his seventh cause of action, plaintiff asserts that defendants Miller, Massaroni, and Brooks Investigations, Inc., through its agent Massaroni, wilfully, intentionally, and maliciously invaded his privacy by intercepting and opening his mail without authorization.

[1] This appeal requires us to decide whether North Carolina recognizes the tort of invasion of privacy by intrusion into the seclusion, solitude, or private affairs of another ("intrusion tort").

**MILLER v. BROOKS**

[123 N.C. App. 20 (1996)]

In *Renwick v. News and Observer and Renwick v. Greensboro News*, 310 N.C. 312, 312 S.E.2d 405, *cert. denied*, 469 U.S. 858, 83 L. Ed. 2d 121 (1984), then Mr. Justice Mitchell, writing for the majority, stated:

> The tort of invasion of privacy is now recognized, in one or more of its forms, in a majority of jurisdictions. . . . It is generally recognized that:
>
>> The right of privacy, as an independent and distinctive legal concept has two main aspects: (1) the general law of privacy, which affords a tort action for damages resulting from an unlawful invasion of privacy, and (2) the constitutional right of privacy which protects personal privacy against unlawful governmental invasion.
>>
>> The general law of the right of privacy, as a matter of tort law, is mainly left to the law of the states . . . .

*Id.* at 321, 312 S.E.2d at 411.

In *Renwick*, the majority listed four types of privacy torts recognized in American jurisdictions. These are: (1) appropriation of a plaintiff's name or likeness for a defendant's advantage; (2) intrusion upon a plaintiff's seclusion, solitude, or private affairs; (3) public disclosure of embarrassing private facts about a plaintiff; and (4) publicity that places a plaintiff in a false light in the public eye. *Id.* at 322, 312 S.E.2d at 411 (citing W. Prosser, Handbook of the Law of Torts § 117 (4th Ed. 1971)).

Our Supreme Court has held that a right of privacy exists in North Carolina and has recognized the first type of privacy tort, i.e., invasion of privacy by the unauthorized appropriation of a plaintiff's photographic likeness for a defendant's advantage as part of an advertisement or commercial enterprise. *Id.* (discussing *Flake v. Greensboro News Co.*, 212 N.C. 780, 195 S.E. 55 (1938)). However, the Court has refused to recognize the third type, invasion of privacy by disclosure of private facts, *see Hall v. Post*, 323 N.C. 259, 372 S.E.2d 711 (1988), or the fourth type, invasion of privacy by placing a plaintiff in a false light before the public. *See Renwick*, 310 N.C. at 322, 326, 312 S.E.2d at 411, 413.

In *Smith v. Jack Eckerd Corp.*, 101 N.C. App. 566, 400 S.E.2d 99 (1991), we defined the intrusion tort as follows:

"[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."

*Smith*, 101 N.C. App. at 568, 400 S.E.2d at 100 (quoting Restatement (Second) of Torts § 652B). However, in *Smith*, the intrusion complained of was not so highly offensive to a reasonable person as to constitute an invasion of privacy. *See Smith*, 101 N.C. App. at 569, 400 S.E.2d at 100.

The level of offensiveness here is infinitely higher than that complained of in *Smith*. Here, plaintiff's forecast of the evidence shows that defendants invaded his home, indeed, his bedroom, and placed a hidden video camera in his room which recorded pictures of him undressing, showering, and going to bed. Plaintiff's evidence also shows that defendant Annette Miller intercepted, sorted through, and threw away some of his mail and that defendant Massaroni picked up plaintiff's mail for her on one occasion. Acts of physically invading a person's home and opening his personal mail are wrongs protected by this tort. *See* Restatement (Second) of Torts § 652B, Comment b. (1977); W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 117, at 854-56 (5th ed. 1984). Plaintiff had every reasonable expectation of privacy in his mail and in his home and bedroom. A jury could conclude that these invasions would be highly offensive to a reasonable person.

Unlike the privacy torts based on public disclosure of private facts and false light publicity, the intrusion tort does not implicate the First Amendment concerns addressed in *Renwick* and *Hall*. *See generally Renwick*, 310 N.C. at 323-26, 312 S.E.2d at 412-14; *Hall*, 323 N.C. at 265-69, 372 S.E.2d at 714-17. Recognition of this tort also does not duplicate other tort claims. An offensive physical contact is not required for the intrusion tort as it is for battery. *Cf. McCracken v. Sloan*, 40 N.C. App. 214, 216, 252 S.E.2d 250, 252 (1979) (stating battery elements). Severe emotional distress is not an element of this tort as it is for intentional and negligent infliction of emotional distress. *Cf. Waddle v. Sparks*, 331 N.C. 73, 82-84, 414 S.E.2d 22, 27-28 (1992) (stating that both emotional distress torts require severe emotional distress). The intrusion tort also does not duplicate trespass since trespass requires proof of an unauthorized entry on land possessed by another and this tort does not. *Cf. Matthews v. Forrest*, 235

N.C. 281, 283, 69 S.E.2d 553, 555 (1952) (stating elements of trespass). Thus, we conclude that the intrusion tort is actionable in this State.

We reject defendants' assertion that the marital relationship between plaintiff and defendant Annette Miller precludes plaintiff from asserting an intrusion claim. The couple agreed, in a written separation agreement, that plaintiff would have sole possession of the Buck Lane premises. Granted, the couple's attempted reconciliation may have voided this agreement. *See* N.C. Gen. Stat. § 52-102 (1991); *Schultz v. Schultz*, 107 N.C. App. 366, 368-73, 420 S.E.2d 186, 188-90 (1992), *disc. review denied*, 333 N.C. 347, 426 S.E.2d 710 (1993). However, even if the separation agreement were nullified by the attempted reconciliation, there is evidence that, at the time of the intrusions, plaintiff and defendant Miller were living separately and had agreed that only plaintiff would live in the marital residence. The evidence raises a genuine issue of material fact as to whether plaintiff had authorized her to enter his house without his permission. Furthermore, there is no evidence that plaintiff authorized his wife or anyone else to install a video camera in his bedroom or to intercept and open his mail.

Although a person's reasonable expectation of privacy might, in some cases, be less for married persons than for single persons, such is not the case here where the spouses were estranged and living separately. Further, the marital relationship has no bearing on the acts of defendants Brooks, Hite, Brooks Investigations, and Massaroni. Plaintiff's marriage to defendant Miller did nothing to reduce his expectations that his personal privacy would not be invaded by perfect strangers. The acts of installing the hidden video camera and the interception of plaintiff's mail as alleged and forecasted are sufficient to sustain plaintiff's claims for invasion of privacy by intrusion on his seclusion, solitude, or private affairs. Plaintiff has offered sufficient proof of these acts, many of which are admitted in defendants' depositions, to survive summary judgment.

[2] Plaintiff also asserts that the trial court erred by granting summary judgment to defendants on his trespass claim. We agree.

To prove trespass, a plaintiff must show that the defendants intentionally, *Industrial Center v. Liability Co.*, 271 N.C. 158, 163, 155 S.E.2d 501, 506 (1967), and without authorization entered real property actually or constructively possessed by him at the time of the entry. *Matthews*, 235 N.C. at 283, 69 S.E.2d at 555. Even an author-

ized entry can be trespass if a wrongful act is done in excess of and in abuse of authorized entry. *Blackwood v. Cates*, 297 N.C. 163, 167, 254 S.E.2d 7, 9 (1979).

There is abundant record evidence showing that defendants, on more than one occasion, intentionally entered the Buck Lane house and premises and that plaintiff had possession at that time. The key issue in dispute is whether these entries were authorized.

Defendants assert that, as plaintiff's wife, defendant Miller was authorized to enter the house and could give others the right. Defendants further dispute plaintiff's testimony that he directed defendant Miller not to enter the house in his absence and without his permission. We conclude that there is a genuine issue of material fact on this issue. Even if she had permission to enter the house and to authorize others to do so, there is also evidence to create a genuine issue of material fact as to whether defendants' entries exceeded the scope of any permission given.

We further conclude that plaintiff's marriage to defendant Annette Miller does not automatically preclude his action for trespass. N.C. Gen. Stat. section 52-5 (1991) provides that a husband and wife may sue each other for damages sustained to their person or property as if they were unmarried. Here, the record evidence tends to show that the real property was titled solely in Terry Miller's name and that only he lived at the Buck Lane house. As discussed above, we recognize that the separation agreement executed by the couple may have been invalidated by their attempted reconciliation. *See Schultz*, 107 N.C. App. at 368-73, 420 S.E.2d at 188-90. Even so, there is a dispute of fact as to whether, after the reconciliation attempt failed, plaintiff instructed defendant Miller not to enter the premises without his consent.

"The essence of a trespass to realty is the disturbance of possession." *Matthews*, 235 N.C. at 283, 69 S.E.2d at 555. If plaintiff had the right of possession at the time of the entries and if defendant Miller had no such right, any entries made by her without plaintiff's consent, or by the other defendants, constitute trespass. This is true even if defendants entered the premises with a bona fide belief that they were entitled to enter the property since such a belief is no defense to trespass. *See Industrial Center*, 271 N.C. at 163, 155 S.E.2d at 506 (citing, *inter alia*, Restatement of Torts (Second) § 164). Similarly, defendants cannot escape liability by asserting that they relied on the

**MILLER v. BROOKS**

[123 N.C. App. 20 (1996)]

advice of counsel in mistakenly concluding that they were entitled to enter plaintiff's property. *See* Restatement (Second) of Torts § 164, Comment a. (1965).

Citing *Jones v. McBee*, 222 N.C. 152, 153, 22 S.E.2d 226, 227 (1942), defendants contend that plaintiff and defendant Miller are tenants in common so that plaintiff cannot maintain an action for trespass against her. As evidence of this assertion, defendants point to plaintiff's testimony, given in a previous criminal proceeding, that, after the marriage, both plaintiff and defendant Miller, signed a deed of trust enabling them to build a house on the Buck Lane lot.

A tenancy in common is created by a conveyance inter vivos or testamentary gift to two or more persons or when two or more persons acquire the property through intestate succession. *See* 2 Robert E. Lee, *North Carolina Family Law* § 123, at 85 (4th ed. 1980). None of these occurred in this case. Citing *Ward v. Ward*, 57 N.C. App. 343, 346, 291 S.E.2d 333, 335-36 (1982), defendants assert that a tenancy in common is created when a husband and wife purchase property and both pay or agree to pay part of the purchase price. *Ward* is not helpful to the defendants, however, because it deals with the purchase of personal property. Furthermore, evidence shows that the land on which the Millers built the Buck Road house was purchased by plaintiff prior to the marriage and that title to the property remained solely in plaintiff's name. We conclude that defendant Miller's signature on a deed of trust on the house does not, in itself, create a tenancy in common. Any equitable distribution or inheritance rights she acquired by her marriage to plaintiff do not establish that she was a tenant in common or that she otherwise had a right to possession at the time of the alleged trespasses. The trial court erred in granting summary judgment for defendants on plaintiff's trespass claim.

[3] Plaintiff further asserts that the court erred by granting summary judgment to defendants on his claim for intentional infliction of emotional distress. A plaintiff who asserts a claim for intentional infliction of emotional distress must prove that the defendant engaged in "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another." *Dickens v. Puryear*, 302 N.C. 437, 452, 276 S.E.2d 325, 335 (1981). The second element may also be proven by a showing that the defendant acted with "reckless indifference to the likelihood" that his or her acts "will cause severe emotional distress." *Id.* To prove the third element, a plaintiff must prove that he has suffered a "*severe and disabling* emo-

tional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Waddle v. Sparks*, 331 N.C. 73, 83, 414 S.E.2d 22, 27 (1992) (quoting *Johnson v. Ruark Obstetrics & Gynecology Ass'n*, 327 N.C. 283, 304, 395 S.E.2d 85, 97, *reh'g denied*, 327 N.C. 644, 399 S.E.2 133 (1990)).

Here, plaintiff has forecast sufficient evidence of these elements to survive summary judgment. A jury could reasonably find that the conduct of defendants in breaking into plaintiff's house and installing a hidden video camera was "extreme and outrageous conduct." On the issue of intent, the record suggests that defendant Miller knew, and told the other defendants, prior to installation of the camera, that plaintiff had a proclivity to be fearful, i.e., she knew and told them that he "slept with a loaded shotgun next to him." Even if defendants did not intend specifically to cause him emotional distress, knowing these circumstances, the record raises a genuine issue of fact as to whether they acted with reckless indifference to the likelihood that installation of the camera, once discovered, would cause him emotional distress. Defendant Miller's initial denial of her involvement, involvement which she later admitted in her deposition, also tends to show reckless indifference to the likelihood that plaintiff would continue to suffer emotional distress. She testified that after he questioned her about the camera and she denied any involvement, he became "real paranoid," and "fearful for his life," and that "it was my fault that he had gone through the week that he had gone through."

Plaintiff has also forecast sufficient evidence of severe and disabling emotional distress to survive summary judgment. He testified that he was scared and worried and had difficulty sleeping after discovering the camera. Immediately after finding the camera in his bedroom, he stayed in a hotel room for two nights. Defendant Miller testified that, after he discovered the camera and before he confirmed her involvement, plaintiff was "real paranoid." She further testified that he told her that he had to go into hiding and that she was aware that he "was riding around town with a loaded shotgun underneath his seat." Although the record does not show that he sought medical attention for his symptoms, we conclude that a jury could reasonably conclude that the symptoms he suffered show a "*severe and disabling* emotional or mental condition" of a type "which may be generally recognized and diagnosed" by trained professionals and that the distress was "*so severe that no reasonable man could be expected to endure it*." *See Waddle*, 331 N.C. at 83-84, 414 S.E.2d at 27-28.

**MILLER v. BROOKS**

[123 N.C. App. 20 (1996)]

**[4]** Plaintiff also asserts that the trial court erred by granting summary judgment on his "claim" for damages to real property. Plaintiff has not offered any cases, nor have we found any, that confer an independent claim for damages to real property. Thus, we treat this, not as a separate claim, but as a prayer for damages incident to plaintiff's trespass claim. Plaintiff has testified that defendants damaged his house by altering the wiring and drilling holes in the ceiling and that he paid expenses for repairs and to hire an electrician. We conclude that plaintiff has forecast sufficient proof to survive summary judgment on his prayer for damages to his real property.

**[5]** Plaintiff further contends that the trial court erred by granting summary judgment on his prayer for punitive damages based on his allegation that defendants acted willfully, intentionally, maliciously, and recklessly. A plaintiff who proves such aggravated conduct can recover punitive damages on a claim for intentional infliction of emotional distress, *Holloway v. Wachovia Bank and Trust Co.*, 339 N.C. 338, 348, 452 S.E.2d 233, 239 (1994), and on a claim for trespass. *Maintenance Equipment Co. v. Godley Builders*, 107 N.C. App. 343, 351, 420 S.E.2d 199, 203 (1992), *disc. review denied*, 333 N.C. 345, 426 S.E.2d 707 (1993). In accord with many other states, we hold that plaintiff may also seek punitive damages based on the intrusion tort upon proof of aggravated conduct. *E.g., Estate of Berthiaume v. Pratt, M.D.*, 365 A.2d 792, 795 (Me. 1976); *LeCrone v. Ohio Bell Telephone Co.*, 201 N.E.2d 533, 536 (Ohio Ct. App. 1963).

Defendants assert that summary judgment was proper on the prayer for punitive damages because they relied on the advice of counsel in ascertaining that Annette Miller had a right to enter the house. We hold that reliance on the advice of counsel is a factor that may be considered by a jury in assessing the reasonableness of a defendant's conduct in regard to punitive damages, but it is not a complete defense. *Cf. Flippo v. Hayes*, 98 N.C. App. 115, 119, 389 S.E.2d 613 (stating that reliance on advice of counsel is a factor to be considered in assessing the reasonableness of a defendant's conduct in a malicious prosecution action, but is not a complete defense), *aff'd per curiam*, 327 N.C. 490, 397 S.E.2d 512 (1990); *see also* 22 Am. Jur. 2d *Damages* § 779 (1988).

Plaintiff's evidence of aggravated conduct includes the following: (1) that defendants knew plaintiff had paranoid tendencies making him particularly susceptible to their intrusions; (2) that defendants Brooks and Massaroni altered the wiring of his house although nei-

ther of them were licensed electricians; (3) that defendants placed the camera in the bedroom rather than in a less private area of the house; (4) that they went back into the house even after they discovered that the camera had been removed. Given this evidence, summary judgment was not proper on plaintiff's prayer for punitive damages.

Reversed and remanded.

Chief Judge ARNOLD and Judge WALKER concur.