***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and oral arguments before the Full Commission. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence or rehear the parties or their representatives. The Full Commission modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matter of law the following which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the Industrial Commission, which has jurisdiction of the parties and of the subject matter.
2. Plaintiff was employed by defendant-employer from November 22, 2002 to March 27, 2003.
3. On all relevant dates, The Travelers was the carrier on the risk for this claim.
4. Plaintiff's average weekly wage was $320.00, yielding a compensation rate of $213.32.
5. At the Deputy Commissioner's hearing, the parties submitted the following:
a. A packet of medical records, which was admitted into the record, and marked as Stipulated Exhibit (2);
b. Defendants' answers to plaintiff's interrogatories, which were admitted into the record, and collectively marked as Stipulated Exhibit (3);
c. A packet of Industrial Commission forms, which was admitted into the record, and marked as Stipulated Exhibit (4), and;
d. A March 26, 2003 correspondence from Mr. Rodney Massey to plaintiff, which was admitted into the record, and marked as Stipulated Exhibit (5).
6. The issues to be determined are whether plaintiff sustained a compensable injury by accident or specific traumatic incident and, if so, to what compensation, if any, plaintiff is entitled and whether plaintiff is entitled to attorney's fees and costs.
 ***********
Based upon the competent evidence of record herein, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the Deputy Commissioner's hearing, plaintiff was 43 years of age, with his date of birth May 23, 1961. Plaintiff is originally from Haiti, where he graduated from high school and attended a technical school, studying air conditioning and welding technology. In addition to work in his vocational trades, plaintiff's work history includes working as a security officer and in construction jobs. At the time of the Deputy Commissioner's hearing, plaintiff was not employed in any capacity.
2. Plaintiff began his employment with defendant-employer as a construction worker and general laborer on November 22, 2002. Plaintiff was a North Carolina resident at that time and at the time of the incident that gave rise to this claim. Plaintiff was a resident of Florida at the time of the Deputy Commissioner's hearing. As a construction worker and general laborer, plaintiff's duties included, but were not limited to, metal framing, concrete work, and general site cleanup, which occasionally required heavy lifting. Plaintiff's normal shift was from 7:00 a.m. until 3:30 p.m.
3. On Friday, February 14, 2003, plaintiff was working for defendant-employer at a construction project on Camp Lejeune. At the work site, plaintiff was breaking up pieces of scrap sheetrock for disposal. To perform this task, plaintiff occasionally used his right foot to kick and break up pieces of sheetrock. On February 14, 2003, plaintiff used a kicking technique with his right foot to break up a piece of the sheetrock measuring 8 feet by 20 feet. Plaintiff kicked the sheetrock with his right foot and lost his balance. As he lost his balance, plaintiff felt a pop in his back, his chest became heavy, and he fell forward onto his knees.
4. Defendants have raised as an issue certain inconsistencies in plaintiff's reports, statements and testimony regarding the exact details of the incident occurring on February 14, 2003. Plaintiff gave a statement that he fell on his face, but later stated that he fell down to his knees. These inconsistencies are given little, if any, weight by the Full Commission, given the totality of the evidence of record, including plaintiff's testimony, which is found to be credible.
5. After his fall, plaintiff was assisted to his feet by a co-worker and then spoke with his site supervisor, Dennis Boone. Plaintiff told Mr. Boone what occurred and plaintiff was instructed to seek medical attention. Mr. Boone then set up a medical appointment and drove plaintiff to Onslow Doctor's Care. At that facility, x-rays were taken and tests revealed that plaintiff had a reduced range of motion in all planes of the lumbar spine. Plaintiff was diagnosed as having sustained an acute lumbar spine sprain for which he was prescribed Soma and Darvocet. Additionally, plaintiff was released to sedentary work.
6. The following Monday, on February 17, 2003, plaintiff returned to Onslow Doctor's Care and reported continued low back pain with no improvement. Plaintiff was prescribed Naprosyn and released to return to light duty work, with restrictions of no lifting over 10 pounds, no prolonged standing or walking, and no kneeling, squatting or climbing.
7. From February 17, 2003 to February 20, 2003, plaintiff was assigned to work in defendant-employer's office filing papers, a position consistent with his physical work restrictions. On February 20, 2003, plaintiff was again examined at Onslow Doctor's Care and reported experiencing increased low back pain. Plaintiff was released to light-duty work only, with restrictions of no lifting over 10 pounds, no kneeling, squatting or bending, and no pushing or pulling of more than 10 pounds. Additionally, plaintiff was referred to physical therapy at The Physical Therapy Clinic, Inc.
8. After February 20, 2003, plaintiff did not have additional medical treatment for 12 days before the start of his physical therapy. During this time, plaintiff testified that his supervisors requested him to lift heavy sheetrock, erect metal framing, construct a wooden frame for an air compressor, and perform other duties that violated his assigned work restrictions. However, plaintiff did not complain to defendant-employer about his assigned duties out of fear of being terminated and because his supervisors and co-workers had knowledge of what his assigned restrictions were. Mr. Boone testified that he attempted to accommodate plaintiff's work restrictions and that he could only recall plaintiff performing work which fell within those light-duty restrictions. However, Mr. Boone did not provide constant supervision for plaintiff during the workday, spent significant time in his office and supervised other employees around the work site.
9. On March 4, 2003, plaintiff began physical therapy and underwent four sessions, with the last session on March 11, 2003. Because of increased reports of pain, plaintiff's physical therapy sessions stopped and medical personnel at Doctor's Care officially discharged plaintiff from the program. During this time, plaintiff wore a lumbar support device while at work, but the device did not alleviate his symptoms. Additionally, plaintiff was unable to take his prescribed medication while working, due to side effects that included drowsiness. By March 13, 2003, plaintiff's was experiencing so much pain that he was unable to report to work and has not worked since that date. Also on March 13, 2003, the physical therapy clinic told Mr. Boone that plaintiff reported increased symptoms with even light exercise, that his sessions had been discontinued, and that plaintiff should return to Doctor's Care for a possible referral to an orthopedist. Mr. Boone then contacted plaintiff and advised him to return to Doctor's Care.
10. As instructed, plaintiff returned to Doctor's Care on March 13, 2003 and was officially referred to an orthopedist. On Friday, March 14, 2003, plaintiff contends that he telephoned defendant-employer and reported to a supervisor that he would not be able work that day because of his symptoms. Additionally, plaintiff testified that he requested that this information be relayed directly to Mr. Boone. On Monday, March 17, 2003, plaintiff and his wife, Dana Alexandre, state that Mrs. Alexandre telephoned defendant-employer and spoke with Mr. Boone. Mrs. Alexandre testified that she informed Mr. Boone that plaintiff was experiencing significant pain, had been referred to an orthopedist and that he was unable to definitively state when or whether he would be able to return to work.
11. Mrs. Alexandre testified that between March 13, 2003 and March 20, 2003, she attempted to obtain defendants' approval for an orthopedic appointment for her husband, but was not successful. Because of this delay in obtaining defendants' approval, plaintiff reported on his own to the emergency room at Onslow Memorial Hospital on March 20, 2003. Plaintiff was noted to be experiencing increased and unabated low back pain with right leg radiculopathy. X-rays of plaintiff's back were negative and he was then referred to a neurosurgeon and for an MRI. Additionally, plaintiff was medically excused by the emergency room doctor from work through March 24, 2003. Plaintiff's wife testified that she communicated this removal of plaintiff from work to defendant-employer by telephone.
12. On March 26, 2003, defendant-employer terminated plaintiff by letter from Rodney Massie, defendant-employer's Vice President. In this correspondence, defendant-employer contends that plaintiff was terminated because of being absent from work without notification from March 18, 2003 through March 21, 2003 and from March 24, 2003 through March 26, 2003. Defendants further contend that these absences were not scheduled in advance as required, and that defendant-employer was unaware of any personal injury or illness that prevented plaintiff from reporting for work. It is uncontested that plaintiff was also absent from work on March 14, 2003 and March 17, 2003, but these days were not contested as absences without notification in defendant-employer's termination correspondence. Given the totality of the credible evidence of record, defendants' contention as to having no knowledge of any illness or injury that would prevent plaintiff from reporting to work is not given any weight by the Full Commission.
13. On March 5, 2003, the Florida Child Support Enforcement Program Office sent an income verification letter to defendant-employer attempting to locate and verify employment and financial information regarding plaintiff. Mrs. Alexandre testified that she and plaintiff had been married for eight years and lived together for approximately twelve years prior to marriage. Plaintiff and his wife have three children together who reside in the household, along with plaintiff's two other children. Because of their large family and confined living space, plaintiff and his family lived across from one another in separate rental homes. Prior to his employment with defendant-employer, plaintiff was unemployed, requiring Mrs. Alexandre to seek financial assistance. At the hearing, Mrs. Alexandre testified that she eventually waived the child support because she and plaintiff were, in her view, together. However, plaintiff was ordered in North Carolina to provide the children with health insurance for as long as he remained employed and entitled to health insurance. Defendants contend that avoidance of his child support obligations was a, if not the, motivating factor for plaintiff not returning to work after March 13, 2003. Based upon the totality of the credible evidence of record, the Full Commission gives this contention little, if any, weight.
14. Plaintiff saw Dr. George Huffmon, neurosurgeon, once on June 3, 2003. Plaintiff and his former attorney arranged this appointment. Plaintiff advised Dr. Huffmon that occasionally his back pain was so severe that he became dizzy, and that he also experienced low back pain when urinating. Dr. Huffmon conducted a medical examination and reviewed plaintiff's March 22, 2003 MRI. The MRI revealed a high intensity zone (HIZ) at the L5-S1 level. At his deposition, Dr. Huffmon testified the HIZ was a tear in the annulus, or the outside of the disc. Additionally, plaintiff's MRI revealed that he had degenerative disc disease. Dr. Huffmon has recommended sending plaintiff to a pain clinic and to physical therapy. As of the date of the Deputy Commissioner's hearing, plaintiff had not received any additional medical treatment other than an emergency room visit to Brooksville Regional Hospital while he was residing in Florida.
15. Dr. Huffmon opined to a reasonable degree of medical certainty that the work-place incident on February 14, 2003 was the cause of plaintiff's disc tear and resulting pain and muscle spasms. Additionally, Dr. Huffmon stated that after four weeks of physical therapy or June 30, 2003, plaintiff should be able to return to work. If physical therapy did not help, Dr. Huffmon recommended plaintiff see an orthopedic surgeon.
16. The circumstances of plaintiff's injury on February 14, 2003 constituted an interruption of his regular work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences.
17. On February 14, 2003, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer.
18. As the direct and natural result of and causally related to his February 14, 2003 injury by accident, plaintiff sustained a high intensity zone (HIZ) at the L5-S1 level, which is a tear in the annulus, or the outside of the disc at that level.
19. At the time of plaintiff's termination he was under assigned light-duty work restrictions and was attempting to be further evaluated. Based upon the credible evidence of record, defendants have failed to prove that plaintiff's termination was for misconduct or fault for which a non-disabled employee would also have been terminated. Accordingly, plaintiff's termination did not constitute a constructive refusal of suitable employment.
20. As the result of his February 14, 2003 injury by accident, plaintiff was unable to earn any wages in his former position with defendant-employer or in any other employment for the period of March 14, 2003 through June 30, 2003. After June 30, 2003, plaintiff received no medical treatment and no doctor took him out of work. As of June 30, 2003, plaintiff was capable of some work, but made no effort to find suitable employment.
21. Based upon the entire record and an overall view of defendants' actions in defense of this matter, there is insufficient evidence upon which to find that defendants' actions were based upon stubborn, unfounded litigiousness.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On February 14, 2003, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. N.C. Gen. Stat. § 97-2(6).
2. As the direct and natural result of, and causally related to his February 14, 2003 injury by accident, plaintiff sustained a high intensity zone (HIZ) at the L5-S1 level, which is a tear in the annulus, or the outside of the disc, at that level. N.C. Gen. Stat. § 97-2(6).
3. Defendants have failed to prove that plaintiff's termination was for misconduct or fault for which a non-disabled employee would also have been terminated. Seagraves v. Austin Co. of Greensboro, 123 N.C. App. 28,472 S.E.2d 587 (1996). Accordingly, plaintiff's termination did not constitute a constructive refusal of suitable employment. Id.; N.C. Gen. Stat. § 97-32.
4. In order to meet the burden of proving disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. Apex Cabinet Co.,305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v. PerdueFarms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001); Russell v. LowesProduct Distribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993). When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demeryv. Perdue Farms, Inc., supra.
6. In the present case, plaintiff met his burden to show that he was disabled from employment from March 14, 2003 through June 30, 2003. After June 30, 2003, however, plaintiff received no medical treatment and no doctor took him out of work. As of June 30, 2003, plaintiff was capable of some work, but made no effort to find suitable employment. Russell v.Lowes Product Distribution, supra.
7. As the result of his February 14, 2003 injury by accident, plaintiff was disabled from any employment and is entitled to temporary total disability compensation at the rate of $213.32 per week for the period of March 14, 2003 through June 30, 2003. N.C. Gen. Stat. § 97-29.
8. As the result of his February 14, 2003 injury by accident, plaintiff is entitled to have defendants pay for all related medical expenses incurred or to be incurred, including expenses associated with treatment provided by Onslow Memorial Hospital and Dr. Huffmon. N.C. Gen. Stat. §§97-25; 97-25.1.
9. Because there is insufficient evidence upon which to conclude that defendants' actions were based upon stubborn, unfounded litigiousness, plaintiff is not entitled to an award of attorney's fees as a sanction pursuant to N.C. Gen. Stat. § 97-88.1.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary total disability compensation at the rate of $213.32 per week for the period of March 14, 2003 through June 30, 2003. This amount has accrued and shall be paid to plaintiff in a lump sum. This compensation is subject to the attorney's fee approved herein.
2. Defendants shall pay for all related medical expenses incurred or to be incurred by plaintiff as the result of his February 14, 2003 injury by accident, including expenses associated with treatment provided by Onslow Memorial Hospital and Dr. Huffmon.
3. A reasonable attorney's fee of 25% of the compensation awarded herein is approved for counsel for plaintiff. This fee shall be deducted from the amounts due plaintiff and paid directly to plaintiff's counsel.
4. Defendants shall pay the costs.
This the 19th day of July 2005.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_____________ THOMAS J. BOLCH COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER