***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. Having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Houser, with modifications.
 *********** ISSUES TO BE DETERMINED
1. Whether, pursuant to the Act and Seagraves v. Austin Co. ofGreensboro, 123 N.C. App. 228, 472 S.E.2d 587 (1996), plaintiff is entitled to ongoing total disability compensation subsequent to August 14, 2009.
2. Whether the Parsons' presumption has been rebutted by defendants? *Page 2 
 ***********
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner, and in the Pre-Trial Agreement, which was admitted into the record and marked as Stipulated Exhibit (1) as:
 STIPULATIONS
1. All parties are properly before the Commission, and the Commission has jurisdiction over the parties and the subject matter herein.
2. All parties are correctly designated, there is no question as to mis-joinder or non-joinder of parties, and all parties are subject to the North Carolina Workers' Compensation Act.
3. On March 20, 2008, plaintiff was an employee of Americredit and held the position of customer account representative.
4. On the date in question, The Hartford was the workers' compensation carrier for defendant-employer.
5. An Industrial Commission Form 62 dated May 13, 2008 was submitted to the Industrial Commission. Plaintiff's average weekly wage is $785.12, and her weekly compensation rate is $523.44.
6. Defendants filed an Industrial Commission Form 24 dated August 14, 2009.
7. On September 22, 2009, Special Deputy Commissioner Emily M. Baucom approved Defendants' Form 24 application and ordered that plaintiff's benefits be terminated effective August 14, 2009.
8. At the same time, plaintiff was experiencing ongoing pain in her right knee following surgery on March 3, 2009. On September 4, 2009, plaintiff's Form 33, medical motion only for specific treatment was filed. Plaintiff requested that the Commission enter an *Page 3 
Order approving an evaluation with Dr. Glen Perry of Perry Orthopedics and Sports Medicine in Charlotte, North Carolina, for a second opinion relating to plaintiff's medical condition, restrictions, and treatment options.
9. On September 11, 2009, the expedited medical motion was heard by Deputy Commissioner Theresa B. Stephenson. Plaintiff's Motion for an Independent Medical Examination (IME)/Second opinion was allowed, and the parties were ordered to agree on the knee expert by September 16, 2009.
10. The parties could not agree on a knee expert, and on September 18, 2009, Deputy Commissioner Stephenson issued an Order instructing defendants to arrange for an evaluation with Dr. Liljeberg of Carolina Orthopedic Specialists by November 18, 2009.
11. Plaintiff's counsel objected to an evaluation with Dr. Liljeberg due to a conflict of interest, and on October 21, 2009, defendants were ordered to arrange an evaluation with a knee expert other than Dr. Liljeberg by December 21, 2009.
12. At the hearing, the parties submitted the following:
 a. A Packet of Various Stipulated Exhibits, which was admitted into the record and marked as Stipulated Exhibit (2), and which included the following:
 i. Industrial Commission Forms and Filings and;
 ii. Medical Records.
 b. A Packet of Employment Records, which was admitted into the record and marked as Stipulated Exhibit (3).
13. Also made part of the record are the depositions of Dr. Roy Majors, Dr. Jonathan James Paul, and Mr. Anthony Enoch. *Page 4 
 ***********
Based upon all of the competent credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of the hearing before the Deputy Commissioner, plaintiff was fifty (50) years of age, with her date of birth being June 8, 1959. During her adult life, plaintiff has primarily worked in data entry and collections positions. Plaintiff began her employment with defendant-employer as a collector in January 2000.
2. On March 20, 2008, plaintiff was participating in a team building workshop when she collided with a co-worker and fell, injuring her right knee.
3. Defendants accepted the compensability of plaintiff's claim through the filing of an Industrial Commission Form 60. On the Form 60, defendants listed the injury sustained by plaintiff as being to her right knee.
4. Subsequent to her injury, plaintiff was transported to Presbyterian Hospital where she was examined and had x-rays taken of her right knee. Plaintiff was diagnosed as having sustained a probable right knee joint effusion.
5. An MRI taken on March 25, 2008 revealed that plaintiff had an avulsion of the anterior cruciate ligament (hereinafter ACL) from the tibial plateau, bone contusions, and hemarthrosis.
6. On April 2, 2008, plaintiff sought treatment from Dr. Roy Majors at Orthocarolina, to whom she reported experiencing right knee pain and stiffness. On April 17, 2008, Dr. Majors performed surgery to repair plaintiff's right ACL avulsion and her right knee medial and lateral menisci. *Page 5 
7. Plaintiff was initially medically excused from work for six weeks for her surgery and her post-operative recovery. Plaintiff underwent physical therapy during this period.
8. On June 9, 2008, plaintiff returned to work with restrictions. She continued to participate in physical therapy and used a right knee brace.
9. Dr. Majors' medical records from August 4, 2008 reflect that plaintiff reported that defendant-carrier had informed her that she was required to use personal days when she went to physical therapy appointments during working hours.
10. Dr. Majors' medical records from October 13, 2008 reflect that further physical therapy for plaintiff had been denied. Dr. Majors noted that, if plaintiff's treatment was delayed, it was likely that plaintiff would develop a permanent flexion contracture, which would significantly increase her impairment, her rating, and her overall functional ability, possibly resulting in the need for additional surgical intervention.
11. On October 24, 2008, Dr. Majors recommended that plaintiff undergo an arthroscopic debridement. Plaintiff, however, declined further surgery at that time. Therefore, Dr. Majors assigned plaintiff a twenty percent (20%) permanent partial disability rating to her right lower extremity, and released her to return to work with no restrictions as of October 27, 2008.
12. On February 23, 2009, plaintiff returned to Dr. Majors and reported experiencing continued pain and stiffness in her right knee. Due to her ongoing symptoms, plaintiff changed her position regarding further surgery, and on March 3, 2009, Dr. Majors performed a right knee partial medial meniscectomy, excision of scar tissues, and removal of suture knots. *Page 6 
13. On March 24, 2009, plaintiff's employment with defendant-employer was terminated due to being written out of work for her second surgery with no personal time or Family Medical Leave Act (hereinafter FMLA) credit to secure her position.
14. On May 18, 2009, plaintiff returned to Dr. Majors and reported that defendant-carrier had again discontinued her physical therapy. Dr. Majors noted that he would be unable to assign a new rating or release plaintiff to full duty work because defendants were not allowing him to treat plaintiff in the manner he believed was appropriate. Additionally, Dr. Majors recommended that plaintiff obtain a second opinion with another orthopedist regarding her treatment, and indicated that he did not plan to see her again until that was done.
15. On July 22, 2009, Dr. Majors saw plaintiff despite the fact that she had not yet obtained a second opinion. Dr. Majors noted that plaintiff continued to experience problems with her right knee, including giving way, swelling, numbness, and pain. Dr. Majors released plaintiff from his care with instructions to return to work without restrictions. He opined that plaintiff had reached maximum medical improvement, and he assigned an additional two percent (2%) permanent partial disability rating to her right lower extremity. Combined with the October 27, 2008 rating Dr. Majors had assigned, this resulted in a total rating of twenty-two percent (22%).
16. Pursuant to plaintiff's expedited medical motion seeking an independent medical examination, defendants arranged for her to be examined by Dr. Jonathon Paul on November 25, 2009. Dr. Paul noted that plaintiff continued to experience popping in her right knee, along with significant pain. Dr. Paul diagnosed plaintiff with arthrofibrosis resulting from her admittedly compensable March 20, 2008 injury by accident, and her April 17, 2008 surgery. *Page 7 
17. Dr. Paul noted that, although the surgical reattachment procedure performed by Dr. Majors is an acceptable approach, he would have performed a reconstruction procedure that he viewed as being more widely accepted and performed because it actually replaces the ACL, thereby reconstructing it as it originally existed. Dr. Paul opined that plaintiff continues to require a reconstruction surgical procedure.
18. Due to the condition of plaintiff's right knee, Dr. Paul assigned work restrictions of no bending, squatting, stooping, or lifting greater than twenty-five (25) pounds.
19. At the hearing before the Deputy Commissioner, plaintiff testified that she continues to experience right knee pain, and that her right knee often becomes stiff and completely gives out, resulting in a risk of falling.
20. Defendants retained Mr. Anthony Enoch to perform a labor market survey. Through his labor market survey, which he performed on February 12, 2010, Mr. Enoch located seven (7) sedentary positions. Based upon her work restrictions, plaintiff was suited for five (5) of these positions, however, Mr. Enoch was unable to state during his May 5, 2010 deposition whether any of the listed positions, or similar positions, were still available. Additionally, Mr. Enoch testified that the demand and competition for these types of sedentary positions is high in the current market.
21. Following her termination by defendant-employer, plaintiff has consistently replied to job postings and applied for employment in keeping with the requirements of the Employment Security Commission. Despite her efforts, plaintiff has yet to be successful in obtaining employment.
22. The Full Commission finds by the greater weight of the medical evidence that plaintiff's need for the second surgery performed by Dr. Majors on March 3, 2009, her ongoing *Page 8 
right knee symptoms, and her need for a third surgical procedure as recommended by Dr. Paul, are the direct and natural result of, and causally related to, her admittedly compensable March 20, 2008 injury by accident, and her initial surgery on April 17, 2008.
23. Defendants have failed to present any credible evidence upon which to find that plaintiff was terminated for causes unrelated to her admittedly compensable March 20, 2008 injury by accident, for which a non-injured employee would have been terminated.
24. Based upon the totality of the credible vocational and medical evidence of record, and as the result of her admittedly compensable March 20, 2008 injury by accident, and her surgeries on April 17, 2008 and March 3, 2009, plaintiff has been unable to earn any wages in her former employment with defendant-employer, or in any other employment, for the period beginning August 14, 2009 through the present and continuing.
25. Defendants' defense of this claim does not amount to stubborn, unfounded litigiousness.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. On March 20, 2008, plaintiff sustained an admittedly compensable injury by accident to her right knee arising out of and in the course of her employment with defendant-employer which necessitated her initial surgery of April 17, 2008. N.C. Gen. Stat. § 97-2(6).
2. North Carolina law requires that, where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to *Page 9 
the cause of the injury. Click v. Pilot Freight Carriers, Inc.,300 N.C. 164, 265 S.E. 2d 389 (1980). Additionally, "the entirety of causation evidence" must "meet the reasonable degree of medical certainty standard necessary to establish a causal link."Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003);Young v. Hickory Bus. Furn., 353 N.C. 227, 538 S.E.2d 912 (2000). "[A]lthough medical certainty is not required, an expert's `speculation' is insufficient to establish causation." Id.
3. Given defendants' filing of an Industrial Commission Form 60, theParsons' presumption applies in this matter, thereby making it defendants' burden to prove that plaintiff's ongoing right knee symptoms, her second surgery performed by Dr. Majors on March 3, 2009, and her need for additional surgery as recommended by Dr. Paul, are not causally related to her admittedly compensable March 20, 2008 injury by accident, and her initial surgery of April 17, 2008. Perez v. American Airlines,174 N.C. App. 128, 620 S.E.2d 288 (2005); Parsons v. Pantry,Inc., 126 N.C. App. 540, 485 S.E.2d 867 (1997).
4. Based upon the totality of the credible evidence of record, defendants have failed to rebut the Parsons' presumption regarding plaintiff's ongoing right knee symptoms, her second surgery performed by Dr. Majors on March 3, 2009, and her need for additional surgery as recommended by Dr. Paul. Id.; N.C. Gen. Stat. § 97-2(6);Click v. Pilot Freight Carriers, Inc.,300 N.C. 164, 265 S.E.2d 389 (1980).
5. Assuming, arguendo, that the Parsons' presumption has been rebutted by defendants, there is sufficient medical evidence of record upon which to independently find that plaintiff's need for the second surgery performed on March 3, 2009, her ongoing symptoms, and her need for a third surgical procedure as recommended by Dr. Paul, are the direct and natural result of, and causally related to her admittedly compensable March 20, 2008 injury by accident *Page 10 
and initial surgery of April 17, 2008. N.C. Gen. Stat. § 97-2(6);Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003);Young v. Hickory Bus. Furn., 353 N.C. 227, 538 S.E.2d 912 (2000);Click v. Pilot Freight Carriers, Inc.,300 N.C. 164, 265 S.E. 2d 389 (1980).
6. Defendants have failed to present any credible evidence upon which to find that plaintiff was terminated for causes unrelated to her admittedly compensable March 20, 2008 injury by accident for which a non-injured employee would have been terminated. Seagraves v. AustinCo. of Greensboro, 123 N.C. App. 28, 472 S.E.2d 587 (1996).
7. Based upon the totality of the credible vocational and medical evidence of record, and as the result of her admittedly compensable March 20, 2008 injury by accident, and her surgeries of April 17, 2008 and March 3, 2009, plaintiff is entitled to payment by defendants of ongoing total disability compensation at the rate of $523.44 per week for the period beginning August 14, 2009 through the present and continuing until such time as she returns to suitable employment, or further Order of the Commission. N.C. Gen. Stat. § 97-29; Russell v. Lowe's ProductDistribution, 108 N.C. App. 762, 425 S.E.2d 454 (1993).
8. As the result of her admittedly compensable March 20, 2008 injury by accident, and her initial surgery of April 17, 2008, plaintiff is entitled to have defendants pay for all related medical treatment incurred or to be incurred, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including expenses associated with her March 3, 2009 surgery and treatment recommended by Dr. Majors, as well as the treatment and surgery recommended by Dr. Paul, when the medical bills have been approved according to established Industrial Commission procedures. N.C. Gen. Stat. §§ 97-25; 97-25.1.
9. Defendants' defense of this claim does not amount to stubborn, unfounded litigiousness. Thus, plaintiff is not entitled to an award of attorney's fees pursuant to N.C. Gen. *Page 11 
Stat. § 97-88.1. Sparks v. Mountain Breeze Restaurant,55 N.C. App. 663, 286 S.E.2d 575 (1982).
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to a reasonable attorney's fee hereinafter approved, defendants shall pay to plaintiff temporary total disability compensation at the rate of $523.44 per week from August 14, 2009 and continuing until such time as plaintiff returns to work, or further Order of the Commission. All benefits that have accrued shall be paid in one lump sum.
2. Defendants shall pay for all related medical treatment incurred or to be incurred by plaintiff as the result of her admittedly compensable March 20, 2008 injury by accident and her initial surgery of April 17, 2008, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including expenses associated with her March 3, 2009 surgery and recommended treatment of Dr. Majors, as well as the treatment and surgery recommended by Dr. Paul, when the medical bills have been approved according to established Industrial Commission procedures. N.C. Gen. Stat. §§ 97-25; 97-25.1.
3. A reasonable attorney's fee of twenty five percent (25%) of the compensation due plaintiff under Paragraph 1 of this Award is approved for plaintiff's counsel and shall be paid as follows: twenty five percent (25%) of the lump sum compensation due plaintiff under Paragraph 1 of this Award shall be deducted from the sums due plaintiff and paid directly to plaintiff's counsel in one lump sum; thereafter, defendants shall pay every fourth check directly to plaintiff's counsel. *Page 12 
4. Defendants shall pay the costs.
This the 25th day of February, 2011.
 S/___________________ LINDA CHEATHAM COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ DANNY LEE McDONALD COMMISSIONER
 *Page 1