GEARY BLACKWOOD, JEWEL BLACKWOOD AND DEWARD BLACKWOOD v. FRED S. CATES, ELIZABETH CATES COX, LARRY BIGGS, TOWN OF HILLSBOROUGH, LARRY EDWARDS AND THE TOWN OF CARRBORO

No. 32

(Filed 20 April 1979)

1. Trespass § 7— implied consent to enter—subsequent wrongful act

Even if there was implied consent for defendant and two policemen to enter plaintiffs' property, defendant was liable for trespass because of his subsequent wrongful act of participating in a false arrest of one plaintiff.

2. *False Imprisonment § 2.1— actual arrest by policeman—liability of private citizen*

Defendant could be held liable for a false arrest and imprisonment of plaintiff even though a police officer actually made the arrest where there was plenary evidence that the officer arrested plaintiff at defendant's "request, direction, or command."

3. *False Imprisonment § 3; Damages § 11.1— trespass and false imprisonment—punitive damages*

Defendant's conduct in a trespass and false imprisonment case was sufficiently outrageous to warrant the submission of issues of punitive damages to the jury.

APPEAL by defendant Fred S. Cates from *Bailey, J.,* in the 9 January 1978 Session and the 3 April 1978 Session of ORANGE County Superior Court. On 4 January 1979, pursuant to G.S. 7A-31, we granted defendant Cates' petition for review of the case prior to a determination by the Court of Appeals.

The parties both agreed to a bifurcated trial before different juries. In the first trial the jury decided only the defendants' liability; in the second trial the jury determined only damages. We will give a combined recitation of the evidence from both trials.

The relevant evidence for the plaintiffs tended to show the following:

Betsy Cates Cox is the daughter of defendant Fred Cates, who was the Mayor of Hillsborough at the time of the events in question. Plaintiff Geary Blackwood knew Betsy Cox, and on 18 December 1974 she invited him to her home. Thereafter, plaintiff Geary Blackwood and Betsy Cox had consensual intercourse, and she demanded that he spend the night with her. When Geary refused, she told him, "I'll have your ass and your job by morning."

Officer Larry Biggs of the Hillsborough police department went to defendant Fred Cates' home after a telephone call from him. The policeman asked the defendant whether he wanted him to call the chief of police. Defendant Cates answered by saying, "If you can't handle this job, you wouldn't be a policeman." Officer Biggs testified that "I felt my job was on the line if I refrained from going," and he said that in his opinion defendant Cates "really had the real authority and the power to hire and fire

policemen." The two of them then proceeded to Carrboro where they met Officer Larry Edwards from the Carrboro police department.

Defendant Fred Cates, Officer Biggs and Officer Edwards went to the Blackwood home. Mr. Blackwood was on the front porch. The men said they wanted to talk to Geary. The two policemen identified themselves, and Mr. Blackwood said, "And you're Mayor Cates" to the defendant Fred Cates. He replied, "You said that, I didn't." Shortly thereafter, everyone went into the Blackwood's house.

Geary arrived at his parents' house. He said to defendant Cates, "I believe you are Fred Cates," and again the defendant answered by saying, "You said that, I didn't." Geary then said, "Well, I just assumed you were," and the defendant replied, "You can assume any damn thing you want."

Officer Biggs then arrested plaintiff Geary Blackwood. The policeman grabbed him off the couch, put his hands over his head, frisked him and handcuffed him. Geary was put into the back of Officer Biggs' police car, and the policeman and defendant Fred Cates got in the front seat. Officer Biggs asked defendant if he wanted Officer Edwards to follow them to Hillsborough, and the defendant said no. On the way to Hillsborough, the defendant Fred Cates told plaintiff Geary Blackwood, "You can thank Officer Biggs you're alive," and defendant Cates told Officer Biggs that "if the court didn't take care of Geary that he would."

While at Hillsborough, Geary Blackwood, still handcuffed, was put into a little room with just defendant Cates for about thirty or forty minutes. He testified that he was very scared, and "I thought I was going to be killed." Plaintiff Geary Blackwood also stated that "I felt like [the defendant Fred Cates] was in charge."

Officer Larry Biggs testified that when he arrested plaintiff Geary Blackwood on 18 December 1974, he had neither a search warrant nor an arrest warrant. He stated that "I [Officer Biggs] followed the directions and requests of Fred Cates that night," and he also said that "I went to Carrboro because Mayor Cates told me to." Officer Edwards of the Carrboro police department stated that his impression was that Officer Biggs arrested Geary Blackwood because of defendant Cates' presence.

The relevant evidence for the defendant tended to show the following:

Mrs. Cates, defendant's wife, testified that on 18 December 1974 her daughter, Betsy Cates Cox, rushed into her house about 10:30 or 11:00 p.m. She was naked and had a bedspread wrapped around her and her three-year old daughter. Betsy Cox had bruises on her cheek and neck, and there was blood on her face.

The defendant Fred Cates stated that after he had found that Geary Blackwood was involved, he called the Hillsborough sheriff's office, and Officer Biggs came to the Cates' house. Defendant Cates also called to have someone meet them in Carrboro and "direct us to where Geary Blackwood lived."

Defendant Fred Cates declared that Officer Biggs told him that he was going to arrest Geary Blackwood and that he rode with the policeman only to direct him to where they were to meet the person in Carrboro. The defendant testified that "[i]t was my clear understanding that the purpose of the trip was to arrest Geary Blackwood but I had no intention of arresting anyone." He also stated that he never threatened Officer Biggs' job; his statement that "if you can't handle the job, you wouldn't be a policeman" was only meant to indicate the officer's capability of handling the matter.

The jury at the first trial found defendant Fred Cates liable for trespass and for the false imprisonment of plaintiff Geary Blackwood. The jury at the second trial awarded plaintiffs $120 in actual damages and $70,000 in punitive damages against defendant Cates.

*Graham & Cheshire by Lucius M. Cheshire for the defendant.*

*Coleman, Bernholz & Dickerson by Douglas Hargrave and Alonzo B. Coleman, Jr. for plaintiffs.*

COPELAND, Justice.

[1] In his first assignment of error, defendant Fred S. Cates [hereinafter referred to as the defendant] claims he could not be held liable for trespass upon the Blackwood property because he and the officers had the implied consent of the owners, Mr. and Mrs. Blackwood, to enter it. This Court has stated, however, that

Blackwood v. Cates

"[o]ne who enters upon the land of another with the consent of the possessor may, by his subsequent wrongful act in excess or abuse of his authority to enter, become liable in damages as a trespasser." *Smith v. VonCannon,* 283 N.C. 656, 660, 197 S.E. 2d 524, 528 (1973). The defendant concedes that a false arrest occurred in the Blackwood house. Therefore, even assuming *arguendo* that there was implied consent for the defendant and the two policemen to enter the Blackwood property, they were liable for trespass because of this later wrongdoing. This argument is without merit.

[2] Defendant next argues that although a false arrest and imprisonment of plaintiff Geary Blackwood occurred, he could not be held liable for it because Officer Biggs, a policeman, actually made the arrest. However, the rule is that "a private citizen at whose request, direction, or command a police officer makes an arrest without a warrant is liable if the arrest turns out to be unlawful." 32 Am. Jur. 2d, *False Imprisonment,* § 34 (1967) and cases cited therein. *See also Long v. Eagle Store Co.,* 214 N.C. 146, 198 S.E. 573 (1938). There was plenary evidence from which the jury could find that Officer Biggs arrested plaintiff Geary Blackwood at defendant's "request, direction, or command." This assignment of error is overruled.

[3] Defendant contends the trial court erred in submitting the issues of punitive damages to the jury. The law on this subject in North Carolina is clear:

> "[I]t has been uniformly held with us that punitive damages may be awarded in the sound discretion of the jury and within reasonable limits . . . . There must be an element of aggravation accompanying the tortious conduct which causes the injury . . . . as when the wrong is done willfully or under circumstances of rudeness, oppression, or in a manner which evinces a reckless and wanton disregard of the plaintiff's rights." *Swinton v. Savoy Realty Co.,* 236 N.C. 723, 725, 73 S.E. 2d 785, 787 (1953), *partly overruled on other grounds in Newton v. Standard Fire Insurance Co.,* 291 N.C. 105, 229 S.E. 2d 297 (1976). *See also Caudle v. Benbow,* 228 N.C. 282, 45 S.E. 2d 361 (1947).

Suffice it to say that defendant's conduct in this case was sufficiently outrageous to warrant submitting issues of punitive

damages to the jury, and that body did not abuse its discretion in its award. This assignment of error is overruled.

We have examined defendant's remaining assignments of error and find them all totally without merit.

At this point we note what questions are not before the Court for our consideration of this case:

1. Defendant made no objection to the bifurcated trial, and he in fact agreed to it before trial.

2. Defendant made no objection to the judge's charges to the juries in either trial.

3. Defendant made no objection to any of the issues submitted to the juries in either trial.

4. Although the defendant originally moved to set aside the verdicts as being excessive after the second trial, he abandoned any argument relating to this motion on appeal.

5. Defendant unequivocally asserted that he did not want a new trial, and the only relief he sought was the grant of nonsuit.

For the foregoing reasons, the judgment of the trial court is

Affirmed.