LIZZIE KUYKENDALL v. W. T. TURNER AND R. T. BOOTH

No. 8218SC424

(Filed 19 April 1983)

**1. Rules of Civil Procedure § 50— directed verdict while jury deliberating**

The trial judge acted in accordance with G.S. 1A-1, Rule 50(a) when he granted directed verdicts on assault and battery issues while the jury was deliberating.

**2. Trespass § 7— unauthorized entry—sufficiency of evidence**

Plaintiff's evidence was sufficient to show an unauthorized entry into her home by defendant police officers so as to support submission to the jury of an issue of trespass where it tended to show that defendants had a warrant for the arrest of plaintiff's former boyfriend and entered plaintiff's house to search for him; plaintiff and her daughter denied that the boyfriend was at plaintiff's house; and the first officer to enter the house did so without announcing his purpose. G.S. 15A-401(e)(1).

**3. Assault and Battery § 3.1; Damages § 11.1— assault and battery—punitive damages—sufficiency of evidence**

Plaintiff's evidence was sufficient to support an award of punitive damages in an action for assault and battery where it tended to show that defendant police officers, while searching plaintiff's house for her former boyfriend, slammed plaintiff around in the hall, shook her "like a rag doll," and used threatening and abusive language.

**4. Assault and Battery § 3.1— action for civil assault—sufficiency of evidence**

Plaintiff's evidence was sufficient to be submitted to the jury in an action against two police officers for assault and battery where it tended to show that defendants, while searching plaintiff's house for her former boyfriend, slammed plaintiff around in the hall and shook her "like a rag doll."

APPEAL by plaintiff from *Seay, Judge.* Judgment entered 11 December 1981 in Superior Court, GUILFORD County. Heard in the Court of Appeals 8 March 1983.

This case involves a suit for damages by the plaintiff for alleged torts committed on her by the defendants, two Greensboro policemen.

The evidence showed that the plaintiff was at her home at 1805 Allenbrook Drive in Greensboro at about eight a.m. on 8 July 1978. Her daughter and son-in-law, Trudy and Kerry Sinclair, were present. The three were conducting a yard sale.

Defendant R. T. Booth, a Greensboro police officer, approached the residence. He had an arrest warrant in his hat for Junior Jim Wilson on a charge of issuing a worthless check.

Booth asked if Wilson was there. The plaintiff and her daughter answered no. Booth testified that they denied knowing Wilson. He left after concluding that the address on the warrant was incorrect. There is a conflict in the evidence if Booth told the two women that he had an arrest warrant for Wilson.

When Booth stopped a few blocks away from the plaintiff's home, he discovered another arrest warrant for Wilson with the plaintiff's address on it. On the warrant that he found was a notation that stated: "Subject will run; owner of house will lie."

Booth then radioed for instructions. Officer W. T. Turner heard Booth and remembered that he had arrested Wilson at the plaintiff's home on 28 February 1978.

Turner testified that the plaintiff denied that Wilson was present when Turner arrested Wilson there in February. A pair of men's shoes near the couch led to the discovery of Wilson in one of the bedrooms on that occasion.

Both defendants then drove to the plaintiff's home. One car parked directly in front of the house and the other next door. Booth went to the back of the house and Turner went to the front.

The evidence conflicts at this point. The Sinclairs testified that Turner went in the house without permission and threatened both of them with arrest. Booth had entered the home through the back door.

The plaintiff asked the defendants what they were doing in her home. According to the plaintiff's evidence, they said that they had a warrant for Wilson's arrest and would search the house to find him if necessary.

Turner testified that his entry into the house was with Kerry Sinclair's consent. When Turner called Booth's name, Booth entered through the back door.

According to the plaintiff's evidence, the plaintiff refused to let the defendants search her home and tried to block the

hallway. The defendants pushed her and then took her into a bedroom where Turner shook her violently, "like a rag doll," according to Trudy Sinclair.

Turner testified that the plaintiff was slamming herself against the hallway wall to block his path. Although he did state that he grabbed the plaintiff's wrist to calm her down, Turner did not say that he shook her.

Booth testified that he moved the plaintiff from the hallway without her resisting. He saw Turner take the plaintiff by the hands when she attempted to strike him.

The plaintiff testified that she loved Wilson but that he left in March or April, 1978. She denied knowing a Junior Wilson when the police found him at her house on 28 February 1978 because she knew him as Jim Wilson.

The plaintiff presented two medical witnesses. Dr. Paul Harkins, an orthopedic surgeon, testified that he began to treat the plaintiff on 11 July 1978, three days after the incidents that are the subject of this case.

He observed bruises and some cervical strain of the plaintiff's neck, shoulder, and low back and said that she could do light work. Harkins concluded that the plaintiff's condition was compatible with the history that she gave.

Russell A. Cobb, Jr., a doctor of chiropractic, also testified. He first saw the plaintiff on 17 October 1980. Cobb's opinion was that the plaintiff's injuries were consistent with a physical mishandling or forcible physical conduct.

The plaintiff also introduced photographs into evidence that showed her injuries. They were received as illustrative evidence only.

At the close of the plaintiff's evidence, the trial judge granted the defendants' motion for a directed verdict on the trespass and punitive damages issues.

On the second day of the trial, the case was submitted to the jury. They deliberated for about one and one-half hours before the court recessed.

The jury returned on the following day and deliberated for one and one-half hours before asking for additional instructions. The trial judge gave an additional instruction on assault, battery, and unreasonable force, to which the plaintiff made a timely objection.

After the jury deliberated for another hour, the trial judge granted the defendants' motion for a directed verdict on all issues. He had reserved ruling on this motion when it was made at the close of the plaintiff's evidence.

The plaintiff's motion to have the jurors brought in to ask if they were deadlocked was denied. The trial judge also denied the plaintiff's motions for a mistrial, a judgment notwithstanding the verdict, and a new trial.

From the verdict and the rulings of the trial judge, the plaintiff appealed.

*McNairy, Clifford & Clendenin, by Michael R. Nash and Locke T. Clifford, for plaintiff-appellant.*

*Nichols, Caffrey, Hill, Evans & Murrelle, by Joseph R. Beatty, for defendant-appellees.*

ARNOLD, Judge.

The primary question on this appeal is if it was proper for the trial judge to enter directed verdicts on the trespass and punitive damage issues at the close of the plaintiff's evidence and on the assault and battery issues while the jury was deliberating.

## I. *Directed Verdict Standard*

In reviewing the grant of a directed verdict on appeal, we "must consider all the evidence in the light most favorable to the plaintiff and may grant the motion only if, *as a matter of law,* the evidence is insufficient to justify a verdict for the plaintiff." *Kelly v. Harvester Co.,* 278 N.C. 153, 158, 179 S.E. 2d 396, 398 (1971) (emphasis in the original). "[T]he evidence in favor of the non-movant must be deemed true, all conflicts in the evidence must be resolved in his favor and he is entitled to the benefit of every inference reasonably to be drawn in his favor." *Snow v. Power Co.,* 297 N.C. 591, 596, 256 S.E. 2d 227, 231 (1979); *Summey v. Cauthen,* 283 N.C. 640, 647, 197 S.E. 2d 549, 554 (1973). *See generally* W. Shuford, N.C. Civil Practice and Procedure § 50-5 (2d ed. 1981) (discusses the test to be used in evaluating a directed verdict motion).

[1]    Before determining if the entry of directed verdicts was proper here, we note that the trial judge acted in accordance with G.S. 1A-1, Rule 50(a) when he granted directed verdicts on the assault and battery issues while the jury was deliberating.

As the rule states, "The order granting a motion for a directed verdict shall be effective *without any assent of the jury*" (emphasis added). In *Odell v. Lipscomb*, 12 N.C. App. 318, 183 S.E. 2d 299 (1971), a case in which the trial judge granted directed verdicts within ten days after the jury failed to reach a verdict, this Court stated that in deciding the directed verdict question, "the court should give no consideration to the fact that the jury may have failed to reach a verdict, but should consider only the evidence in the case." 12 N.C. App. at 321, 183 S.E. 2d at 301. Thus, Rule 50(a) eliminates the useless act of asking for jury assent. 5A Moore's Federal Practice ¶ 50.02[3] (2d ed. 1982).

We are aware that the better practice may be for the trial judge to refrain from directing a verdict, even when he could, in order to expedite a final determination on appeal. That is, if the grant of a directed verdict is reversed, a new trial is required. But if the case goes to the jury, the trial judge can grant a judgment notwithstanding the verdict if he believes the verdict to be erroneous or the court on appeal can reverse and reinstate the jury verdict without a new trial if it finds that the trial court erred. *See* C. Wright & A. Miller, Federal Practice and Procedure § 2533 (1971). However, the trial judge did not violate Rule 50(a) in this case.

We now consider if the evidence in support of the four issues in this case was sufficient to withstand a directed verdict motion.

## II. *Trespass*

[2]    A trespass to real property requires three elements: 1. Possession by the plaintiff when the trespass was committed, 2. An unauthorized entry by the defendant, and 3. Damage to the plaintiff from the trespass. *Matthews v. Forrest*, 235 N.C. 281, 283, 69 S.E. 2d 553, 555 (1952).

The plaintiff was clearly in possession of her home when the officers entered and has arguably presented enough evidence to show damage from their entry. What this issue turns on is if the entry of the defendants was unauthorized.

G.S. 15A-401(e)(1) outlines the situations when a law enforcement officer may enter on private premises to arrest someone. Three requirements must be met. The officer must possess a warrant for the arrest of a person, he must have reasonable cause to believe that the person to be arrested. is present, and he has given, or made a reasonable effort to give, notice of his authority and purpose to an occupant of the premises.

When considering the evidence in the light most favorable to the plaintiff, we find that the entry by the defendants here was unauthorized under G.S. 15A-401(e)(1).

The plaintiff's evidence shows that she never saw the warrant and that Booth would not let her see it. The denial by the plaintiff and her daughter that Wilson was at the house is sufficient to negate the reasonableness of the defendants' belief that he was present. Finally, even though the authority of the defendants was clear, the plaintiff's evidence shows that Turner entered the house without announcing his purpose. Thus, it was improper to direct a verdict for the defendants on the trespass issue.

### III. *Punitive Damages*

[3] In North Carolina, punitive damages are recoverable in assault and battery cases only when the assault and battery is accompanied by an element of aggravation like malice. North Carolina courts will not imply or impute malice, but instead require a showing of actual or express malice, "that is, a showing of a sense of personal ill will toward the plaintiff which activated or incited a defendant to commit the alleged assault and battery." *Shugar v. Guill,* 304 N.C. 332, 338-39, 283 S.E. 2d 507, 511 (1981).

The purpose of punitive damages is not to compensate a plaintiff for personal injuries. Instead, they are awarded to punish the defendant's conduct. E. Hightower, N.C. Law of Damages § 4-1 (1981).

Punitive damages are awarded only in cases where a plaintiff also recovers nominal or compensatory damages. *Clemmons v. Insurance Co.,* 274 N.C. 416, 163 S.E. 2d 761 (1968). The jury has discretion on whether to award punitive damages even though the trial judge decides if there is evidence to be submitted to the jury that would justify their award. Ervin, *Punitive Damages in North Carolina,* 59 N.C.L. Rev. 1255, 1257-58 (1981).

We cannot say as a matter of law that the defendants did not show "personal ill will" toward the plaintiff when they searched her house. The plaintiff's evidence showed that they slammed her around in the hall, shook her "like a rag doll," and used threatening and abusive language. When considered in the light most favorable to the plaintiff and resolving all conflicts in the evidence in her favor, the punitive damages issue should have gone to the jury.

### IV. *Assault and Battery*

[4]  Our Supreme Court recently reiterated that North Carolina follows the common law definitions of assault and battery. According to *Dickens v. Puryear,* 302 N.C. 437, 276 S.E. 2d 325 (1981),

> An assault is an offer to show violence to another without striking him, and a battery is the carrying of the threat into effect by the infliction of a blow. The interest protected by the action for battery is freedom from intentional and unpermitted contact with one's person; the interest protected by the action for assault is freedom from apprehension of a harmful or offensive contact with one's person.

302 N.C. at 444-45, 276 S.E. 2d at 330. *See also* Restatement (Second) of Torts §§ 13 and 21 (1965); W. Prosser, Handbook of the Law of Torts §§ 9 and 10 (4th ed. 1971) (definitions and interests to be protected).

The evidence considered in the light most favorable to the plaintiff shows that this issue should have gone to the jury. Slamming her against the walls and shaking her could constitute a battery and there is some evidence of an apprehension of unpermitted contact. Even the defendants admit that Turner grabbed the plaintiff's wrists.

We find *Todd v. Creech,* 23 N.C. App. 537, 209 S.E. 2d 293, *cert. denied,* 286 N.C. 341, 211 S.E. 2d 216 (1974), to be helpful. In granting a new trial in an assault and battery case against a law enforcement officer, the court stated, "[W]hen there is substantial evidence of unusual force, it is for the jury to decide whether the officer acted as a reasonable and prudent person or whether he acted arbitrarily and maliciously." 23 N.C. App. at 539, 209 S.E. 2d at 295. *Todd* is persuasive even though the plaintiff there sued

Kuykendall v. Turner

an officer who sought to arrest him while the plaintiff here is suing officers who sought to search her house to arrest another person.

We also note that G.S. 15A-401(d), which outlines when force may be used in an arrest, states: "Nothing in this subdivision constitutes a justification for willful, malicious or criminally negligent conduct by any person which injures or endangers any person or property, nor shall it be construed to excuse or justify the use of unreasonable or excessive force." The plaintiff's evidence presents questions on if the defendants' conduct was willful or malicious, whether she was injured, and if the force used was unreasonable.

Although we hold that the jury should have been allowed to reach a verdict on the issues submitted by the plaintiff here, we express no opinion on the merits of the plaintiff's claims.

V. *Jury Instructions*

The plaintiff argues that the trial judge's jury instructions on assault and battery at the end of all the evidence and when the jury asked for a clarifying instruction were erroneous. This contention is irrelevant because the jury was not allowed to reach a verdict. As a result, any error in the instructions was harmless.

Because we find that directed verdicts were improperly entered on the issues in this case, it is unnecessary to discuss the denial of plaintiff's motion for a mistrial and a new trial.

Reversed and remanded for a new trial.

Judges BECTON and PHILLIPS concur.