LUDOVICUS N. KEYZER, A/K/A LUDO KEYZER, JOSEPH KINTZ, ROBIN KINTZ, CARL W. PARKER III, AND BARRY NAKELL, PLAINTIFFS v. AMERLINK, LTD., RICHARD SPOOR, DEBORAH N. MEYER, JOHN MEUSER, MEYER & MEUSER, P.A., AMERICAN DETECTIVE SERVICES, INC., AND KENNETH J. JOHNSON, DEFENDANTS

No. COA04-1096

(Filed 20 September 2005)

## 1. Privacy— invasion of—asking about prior settlement— testing confidentiality agreement

Plaintiffs did not articulate how their personal affairs or private concerns were intruded upon by defendants posing as potential clients or interviewing a former client to test compliance with a confidentiality clause in a settlement agreement. The trial court correctly dismissed or granted summary judgment on invasion of privacy claims.

## 2. Trespass— private detectives posing as potential legal clients—consent to enter

The trial court did not err by granting summary judgment for defendants on a civil trespass claim where defendants sent private investigators posing as potential clients to plaintiff attorney's law office, which was also his home, to ask about a prior suit which had been settled with a confidentiality agreement. Although plaintiff contended that defendants' misrepresentation of their identities rendered any consent void, the entry complained of was not of the kind that interfered with plaintiff's ownership or possession of the land.

Judge TYSON concurring in part and dissenting in part.

Appeal by plaintiffs from orders entered 22 September 2003, 30 January 2004, 22 March 2004, and 12 April 2004 by Judge John R. Jolly, Jr., in Orange County Superior Court. Heard in the Court of Appeals 9 May 2005.

*Barry Nakell for plaintiffs-appellants.*

*Anderson, Johnson, Lawrence, Butler & Bock, L.L.P., by Steven C. Lawrence, for defendants-appellees Amerlink, Ltd. and Richard Spoor.*

*Cranfill, Sumner & Hartzog, L.L.P., by Richard T. Boyette, Alicia S. Levy, and Meredith T. Black, for defendants-appellees Deborah N. Meyer, John Meuser, and Meyer & Meuser, P.A.*

**KEYZER v. AMERLINK, LTD.**

[173 N.C. App. 284 (2005)]

*Nexsen Pruet Adams Kleemeier, PLLC, by Patrick D. Sarsfield, II, for defendants-appellees American Detective Services, Inc., and Kenneth J. Johnson.*

LEVINSON, Judge.

Plaintiffs appeal from orders dismissing their claims against defendants for invasion of privacy, trespass, unfair or deceptive trade practices, and punitive damages. We affirm.

Preliminarily, we note that this is a companion case to *Keyzer v. Amerlink,* 172 N.C. App. 592, —— S.E.2d —— (filed 16 August 2005). The facts of the instant case are summarized, in pertinent part, as follows: Ludovicus Keyzer (Keyzer), a Dutch citizen residing in the Netherlands, purchased a log home kit from Amerlink, Ltd. (Amerlink), a corporation that does business in North Carolina selling log home kits. In February 1999 Keyzer filed suit against Amerlink, asserting claims arising from the log home package sale. Amerlink was represented in this lawsuit by defendants Meyer, Meuser, and Meyer & Meuser, P.A. On 12 September 2001 the parties reached a settlement agreement, which provided in relevant part that: (1) defendants would make two payments to plaintiff totaling $200,000; (2) plaintiff would release defendants from liability on all claims arising from the log home sale; and (3) neither party would reveal the terms of the settlement contract. Defendants Amerlink and Spoor subsequently employed defendants American Detective Services, Inc. (American Detective) and Kenneth Johnson (Johnson) to conduct certain investigations of plaintiffs Barry Nakell (Nakell) and Keyzer, in order to ascertain their compliance with the settlement contract's confidentiality clause.

The present appeal arises from a lawsuit initiated 11 April 2003 by plaintiffs (Keyzer, Joseph and Robin Kintz, Carl Parker, III, and Barry Nakell). Plaintiffs filed suit against defendants (Amerlink, Richard Spoor, Deborah Meyer, John Meuser, Meyer & Meuser, P.A., American Detective Services, Inc., and Kenneth Johnson), seeking compensatory and punitive damages for invasion of privacy, civil trespass, and unfair or deceptive trade practices. Plaintiffs alleged that defendants' conduct during their investigation of Nakell and Keyzer, and specifically their interviews of Nakell and Keyzer, had given rise to these claims. By their answers, defendants denied the material allegations of the complaint. Defendants also moved for dismissal of plaintiffs' claims under N.C. Gen. Stat. § 1A-1; Rule 12(b)(6) (2003), and for summary judgment under N.C. Gen. Stat. § 1A-1, Rule 56

(2003). In response to the parties' motions, the trial court entered several orders, including the following:

> Order of 22 September 2003: Dismissal, per Rule 12(b)(6), of all claims by all plaintiffs, brought against Meyer, Meuser, and Meyer & Meuser, P.A. for trespass and punitive damages, and dismissal of claims for invasion of privacy brought by all plaintiffs, with the exception of Keyzer's privacy claim.

> Order of 30 January 2004: Summary judgment entered in favor of defendants Meyer, Meuser, and Meyer & Meuser, P.A., on Keyzer's claim for invasion of privacy.

> Order of 22 March 2004: Summary judgment entered in favor of American Detective and Johnson, on all of plaintiffs' claims.

> Order of 12 April 2004: Summary judgment entered in favor of Amerlink and Spoor on all of plaintiffs' claims.

Plaintiffs timely appealed from the above orders.

### Standard of Review

Plaintiffs appeal from the trial court's dismissal of certain claims under Rule 12(b)(6), and from the court's award of summary judgment in favor of defendants on other claims. Accordingly, we first review the pertinent standards of review.

The standard of review of a court's dismissal under Rule 12(b)(6) is well established: "The question before a court considering a motion to dismiss for failure to state a claim is whether, if all the plaintiff's allegations are taken as true, the plaintiff is entitled to recover under some legal theory." *Toomer v. Garrett*, 155 N.C. App. 462, 468, 574 S.E.2d 76, 83 (2002). Dismissal under Rule 12(b)(6) is proper "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (2) when some fact disclosed in the claim necessarily defeats plaintiff's claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1979). In addition, because "this appeal is based on [defendant's] motion to dismiss, we must treat plaintiff's factual allegations as true." *Lovelace v. City of Shelby*, 351 N.C. 458, 459, 526 S.E.2d 652, 654 (2000) (citation omitted).

Regarding summary judgment orders, Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file,

**KEYZER v. AMERLINK, LTD.**

[173 N.C. App. 284 (2005)]

together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." On a motion for summary judgment, "[t]he party moving for summary judgment ultimately has the burden of establishing the lack of any triable issue of fact[.]" *Pembee Mfg. Corp. v. Cape Fear Constr. Co.*, 313 N.C. 488, 491, 329 S.E.2d 350, 353 (1985). " 'The movant may meet this burden by proving that an essential element of the opposing party's claim is nonexistent, or by showing through discovery that the opposing party cannot produce evidence to support an essential element of his claim or cannot surmount an affirmative defense which would bar the claim.' " *Roumillat v. Simplistic Enterprises, Inc.*, 331 N.C. 57, 63, 414 S.E.2d 339, 342 (1992) (quoting *Collingwood v. G.E. Real Estate Equities*, 324 N.C. 63, 66, 376 S.E.2d 425, 427 (1989)).

However, "for defendants to prevail on their motion for summary judgment, they [do] not need to negate every element of [plaintiff's claim]. 'If defendant effectively refutes even one element, summary judgment is proper.' " *RD&J Props. v. Lauralea-Dilton Enters., LLC*, 165 N.C. App. 737, 745, 600 S.E.2d 492, 498 (2004) (quoting *Ramsey v. Keever's Used Cars*, 92 N.C. App. 187, 190, 374 S.E.2d 135, 137 (1988)). "Further, the nonmoving party may not rely on the mere allegations and denials in his pleadings but must by affidavit, or other means provided in the Rules, set forth specific facts showing a genuine issue of fact for the jury; otherwise, 'summary judgment, if appropriate, shall be entered against [the nonmoving party].' " *In re Will of McCauley*, 356 N.C. 91, 100-01, 565 S.E.2d 88, 95 (2002) (quoting Rule 56(e)).

### Invasion of Privacy

[1] Plaintiffs brought claims of invasion of privacy against defendants, on the theory of intrusion into each plaintiff's seclusion, solitude, or private affairs. Plaintiffs appeal from orders by the trial court that (1) dismissed, under Rule 12(b)(6), all claims of invasion of privacy brought against Meyer, Meuser, and Meyer & Meuser, P.A., except for the claim brought by Keyzer; (2) granted summary judgment for Meyer, Meuser, and Meyer & Meuser, P.A. on Keyzer's invasion of privacy claim; and (3) granted summary judgment for Amerlink, Spoor, American Detective, and Johnson, on all claims against them for invasion of privacy. Plaintiffs argue that their complaint sufficiently states a claim for relief against Meyer, Meuser, and Meyer & Meuser, P.A., and that the evidence demonstrated a genuine issue of material fact regarding the invasion of privacy claims, both

against the other defendants and on Keyzer's claim against Meyer, Meuser, and Meyer & Meuser, P.A. We disagree.

> The tort of invasion of privacy by intrusion into seclusion has been recognized in North Carolina and is defined as the intentional intrusion 'physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . [where] the intrusion would be highly offensive to a reasonable person.' The kinds of intrusions that have been recognized under this tort include 'physically invading a person's home or other private place, eavesdropping by wiretapping or microphones, peering through windows, persistent telephoning, unauthorized prying into a bank account, and opening personal mail of another.'

*Toomer*, 155 N.C. App. at 479-80, 574 S.E.2d at 90 (quoting *Miller v. Brooks*, 123 N.C. App. 20, 26, 472 S.E.2d 350, 354 (1996), and *Hall v. Post*, 85 N.C. App. 610, 615, 355 S.E.2d 819, 823 (1987), *rev'd on other grounds*, 323 N.C. 259, 372 S.E.2d 711 (1988)). Thus, "[g]enerally, there must be a physical or sensory intrusion or an unauthorized prying into confidential personal records to support a claim for invasion of privacy by intrusion." *Broughton v. McClatchy Newspapers, Inc.*, 161 N.C. App. 20, 29, 588 S.E.2d 20, 27 (2003) (citing *Burgess v. Busby*, 142 N.C. App. 393, 544 S.E.2d 4 (2001)).

In the instant case, plaintiffs' claims of invasion of privacy are primarily based on their allegations that: (1) plaintiffs Keyzer, Mr. and Mrs. Kintz, and Parker were represented by plaintiff Nakell in their respective litigations with defendant Amerlink; (2) defendants acted in concert to conduct an interview with Nakell in his law office, located in the same building as his residence; (3) during the Nakel interview, defendant-investigator Johnson posed as a disgruntled Amerlink customer and as a potential legal client of Nakell's; (4) defendants tape-recorded the interview with Nakell without his knowledge; (5) defendants also hired investigators to interview Keyzer at his flower shop in The Netherlands; (6) during these interviews, the investigators asked questions relevant to the litigation between Keyzer and Amerlink, and to the settlement agreement executed by the parties, without revealing their connection to defendants; (7) defendants' investigation of plaintiffs' compliance with the confidentiality clause had no legitimate purpose and was based on improper motives; and (8) defendants Meyer, Meuser, and Meyer & Meuser, P.A. acted in violation of the North Carolina Rules of Professional Conduct.

However, plaintiffs fail to articulate how these allegations, if true, constitute evidence that any of their personal affairs or private concerns were intruded upon. Moreover, none of the plaintiffs produced any evidence, by affidavit or otherwise, that defendants had investigated their personal affairs; had spied on, observed, or otherwise obtained any information about their private concerns; had actually obtained any information protected by the attorney-client privilege; had entered personal, non-commercial, areas of any of their houses; or had in any other way involved themselves in any of the plaintiffs' private or personal lives.

As regards defendants Meyer, Meuser, and Meyer & Meuser, P.A., we conclude that plaintiffs' complaint fails to state a claim for relief for invasion of privacy committed against plaintiffs Nakell, Mr. and Mrs. Kintz, or Parker. Accordingly, the trial court did not err by dismissing plaintiffs' complaints under Rule 12(b)(6). We further conclude that the court did not err by granting summary judgment for Meyer, Meuser, and Meyer & Meuser, P.A. on plaintiff Keyzer's claim for invasion of privacy. We note that the parties have presented arguments on whether to apply the law of North Carolina or of the Netherlands to Keyzer's claim, and we conclude that the result is the same either way. We also conclude that the trial court did not err by granting summary judgment for the other defendants on plaintiffs' claims for invasion of privacy. This assignment of error is overruled.

### Trespass

**[2]** Plaintiff Nakell argues that the trial court erred by granting summary judgment in favor of defendants on his claim of civil trespass. We disagree.

"The elements of trespass to real property are: (1) possession of the property by the plaintiff when the alleged trespass was committed; (2) an unauthorized entry by the defendant; and (3) damage to the plaintiff from the trespass." *Broughton*, 161 N.C. App. at 32, 588 S.E.2d at 29 (citing *Kuykendall v. Turner*, 61 N.C. App. 638, 642, 301 S.E.2d 715, 718 (1983)).

In the instant case, plaintiff argues that defendants' entry onto his property was unauthorized, and thus was a trespass. The evidence shows that Johnson and another investigator met with plaintiff in his law office after making an appointment by posing as prospective clients. Plaintiff contends that defendants' misrepresentation of their identities and purpose for visiting rendered "any consent *void ab ini-*

*tio.*" In support of this proposition, plaintiff cites *Blackwood v. Cates*, 297 N.C. 163, 254 S.E.2d 7 (1979); *Miller v. Brooks*, 123 N.C. App. 20, 472 S.E.2d 350 (1996); and *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 517 (4th Cir. 1999). However, these cases do not support plaintiff's contention under the facts of the instant case. *Blackwood* and *Miller* merely stand for the proposition that a party's consent to another's entry onto his land does not insulate against liability for trespass when the other commits subsequent wrongful acts in excess or abuse of his authority to enter, not a *per se* rule that a misrepresentation of identify invalidates the consent of the party to whom the misrepresentation was made. Likewise, *Food Lion, supra*, noted that "consent gained by misrepresentation is sometimes sufficient" as a defense to a claim of trespass, did not hold in accord with plaintiff's position, and further bolsters the conclusion that the individual facts of a case determine whether consent given pursuant to a misrepresentation of identify is valid as a defense to a claim of trespass.

We observe further that *Food Lion* adopted in large measure the reasoning of another case, *J.H. Desnick v. American Broadcasting Companies, Inc.*, 44 F.3d 1345 (7th Cir. 1995), stating that "[w]e like *Desnick's* thoughtful analysis about when a consent to enter that is based on misrepresentation may be given effect." *Food Lion, id.* We also find the analysis in *Desnick* useful. The case dealt with reporters who posed as patients of a medical practice in order to obtain information about its procedures, and analyzed the consent issue in light of the aim of the tort of the trespass to protect the inviolability of a person's property. The Court held:

> There was no invasion in the present case of any of the specific interests that the tort of trespass seeks to protect. . . . [T]he defendants' test patients gained entry into the plaintiffs' premises by misrepresenting their purposes[.] . . . But the entry [did] not . . . infring[e on] the kind of interest of the plaintiffs that the law of trespass protects; it was not an interference with the ownership or possession of land.

*Desnick*, 44 F.3d at 1352, 1353. Although not binding on this Court, we find the reasoning of *Desnick* persuasive. Moreover, this Court took a similar approach in *Broughton.* In that case, the defendant, a newspaper reporter, obtained permission to enter onto plaintiff's property by misrepresenting the visit as a "social" call. The defendant later published a newspaper article that included information gathered

during this visit. This Court held that "[p]laintiff has not shown or alleged that [defendant's] entry onto her land was unauthorized. To the contrary, the evidence was that plaintiff engaged in 'social' conversation with [defendant] and did not ask her to leave the property. Thus, the trial court properly granted summary judgment for defendants . . . on the trespass claim." Applying the reasoning of *Broughton* to the instant case, we hold that the trial court properly granted summary judgment for defendants on plaintiff's claim of trespass. Under these facts, the entry complained of was not of the kind that interfered with plaintiff's ownership or possession of the land; therefore, plaintiff has failed to raise a genuine issue of material fact that defendants made an unauthorized entry of the kind to support the tort of trespass. This assignment of error is overruled.

We have examined plaintiffs' remaining arguments and find them to be without merit. We conclude the trial court did not err by dismissing plaintiffs' claims, and that the court's order should be

Affirmed.

Chief Judge MARTIN concurs.

Judge TYSON concurs in part and dissents in part.

TYSON, Judge concurring in part, dissenting in part.

I concur to affirm the dismissal of plaintiffs' invasion of privacy claim. The dismissal of plaintiffs' civil trespass claim and consequently, their unfair or deceptive practices and punitive damages claims should be reversed. I respectfully dissent.

### I. Civil Trespass

The majority's opinion holds defendants did not make an " 'unauthorized entry' of the kind to support the tort of trespass" because "the entry complained of was not of the kind that interfered with plaintiffs' ownership or possession of the land." I disagree.

In the bundle of rights that define private property, the greatest stick in the bundle is exclusivity of possession. Exclusivity of possession is the basis that permits the landowner to exclude anyone from his or her property. *Hildebrand v. Telegraph Co.*, 219 N.C. 402, 408, 14 S.E.2d 252, 256 (1941) ("The word 'property' extends to every aspect of right and interest capable of being enjoyed as such upon

which it is practicable to place a money value. The term comprehends not only the thing possessed but also, in strict legal parlance, means the right of the owner to the land; the right to possess, use, enjoy and dispose of it, and the corresponding right to exclude others from its use."). This exclusivity of possession is the basis for civil and criminal trespass. *Id.*

"The elements of trespass to real property are: (1) possession of the property by the plaintiff when the alleged trespass was committed; (2) an unauthorized entry by the defendant; and (3) damage to the plaintiff from the trespass." *Broughton v. McClatchy Newspapers, Inc.*, 161 N.C. App. 20, 32, 588 S.E.2d 20, 29 (2003) (citing *Kuykendall v. Turner*, 61 N.C. App. 638, 642, 301 S.E.2d 715, 718 (1983)). Consent is defined as an "[a]greement, approval, or permission as to some act or purpose, esp. given voluntarily by a competent person . . . ." Black's Law Dictionary (8th ed. 2004). "Consent to a trespass which is obtained as the result of duress, fraud, or mistake is ineffective to establish a defense to an action for trespass to land." William S. Haynes, *North Carolina Tort Law* § 28-5 (1989).

Prior precedents have addressed the issue of whether obtaining consent to enter property obtained by fraud revokes consent, and the entry on another's property becomes unauthorized in a civil trespass case. Our Supreme Court has held consent to enter the lands of another is conditional, not absolute, and can be revoked by subsequent acts or be void *ab initio*. "One who enters upon the land of another with the consent of the possessor may, by his subsequent wrongful act in excess or abuse of his authority to enter, become liable in damages as a trespasser." *Blackwood v. Cates*, 297 N.C. 163, 167, 254 S.E.2d 7, 9 (1979) (defendants did not engage in a voluntary act to invalidate their perceived consent to be on the plaintiffs' property) (quoting *Smith v. VonCannon*, 283 N.C. 656, 660, 197 S.E.2d 524, 528 (1973)). In *Smith*, our Supreme Court held, "[w]e perceive no basis for a distinction between an involuntary intrusion upon the land of another and an involuntary exceeding of the landowner's assent to the original entry . . . ." 283 N.C. at 661, 197 S.E.2d at 528.

The majority's opinion asserts *Broughton v. McClatchy Newspapers, Inc.*, controls its result here. 161 N.C. App. 20, 588 S.E.2d 20 (2003). In *Broughton*, the plaintiff alleged the reporter misrepresented the purpose of a visit, stating her visit to plaintiff's home was a "social call" when in fact, the visit was to gather intelligence for a subsequent negative article about the plaintiff and her divorce. *Id.* at 32, 588 S.E.2d at 29. This Court held the plaintiff failed to show or

allege the reporter was an unauthorized trespasser when the plaintiff engaged in "social" conversation on the front porch of her home, and plaintiff did not ask the reporter to leave her property. *Id.* at 33, 588 S.E.2d at 29. Here, plaintiffs alleged in their complaint defendant's entry was unauthorized. As N.C. Gen. Stat. § 1A-1, Rule 56(c) (2003) provides, summary judgment shall be rendered if "there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." The issue of consent is a question for the jury.

The majority's opinion further cites *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, as persuasive authority to support its notion that consent procured by fraud is not void or voidable. 194 F.3d 505, 517 (4th Cir. 1999) (adopting the Seventh Circuit's reasoning in *Desnick v. American Broadcasting Companies, Inc.*, 44 F.3d 1345 (1995)).

The Fourth Circuit recognized:

> the various jurisdictions and authorities in this country are not of one mind in dealing with the issue. *Compare Restatement (Second) of Torts*, § 892B(2) (1965) ("if the person consenting to the conduct of another . . . is induced [to consent] by the other's misrepresentation, the consent is not effective for the unexpected invasion or harm") and *Shiffman v. Empire Blue Cross and Blue Shield*, 256 A.D.2d 131, 681 N.Y.S.2d 511, 512 (App. Div. 1998) (reporter who gained entry to medical office by posing as potential patient using false identification and insurance cards could not assert consent as defense to trespass claim "since consent obtained by misrepresentation or fraud is invalid"), *with Desnick*, 44 F.3d at 1351-53 (ABC agents with concealed cameras who obtained consent to enter an ophthalmic clinic by pretending to be patients were not trespassers because, among other things, they "entered offices open to anyone"); *Baugh v. CBS, Inc.*, 828 F. Supp. 745, 757 (N.D. Cal. 1993) ("where consent was fraudulently induced, but consent was nonetheless given, plaintiff has no claim for trespass"); and *Martin v. Fidelity & Cas. Co. of New York*, 421 So.2d 109, 111 (Ala. 1982) (consent to enter is valid "even though consent may have been given under a mistake of facts, or procured by fraud") (citation omitted).

*Id.*

In *Food Lion, Inc.*, ABC reporters falsified job applications with misrepresented identities and references to secure employment at

Food Lion. 194 F.3d at 510. These applications failed to mention their concurrent employment with ABC. *Id.* The reporters used their positions as purported Food Lion employees to gain access to areas and information not available to the public. *Id.* at 510-11. The court affirmed the lower court's decision, holding Food Lion showed a trespass, not by misrepresentation, but by the breach of their duty of loyalty "triggered by the filming in non-public areas, which was adverse to Food Lion—was a wrongful act in excess of [the reporters'] authority to enter Food Lion's premises as employees." *Id.* at 518 (citing *Blackwood,* 297 N.C. at 167, 254 S.E.2d at 9 (finding liability for trespass when activity on property exceeded scope of consent to enter)). Food Lion's consent for the reporters to enter or remain on the property was "nullified when they tortiously breached their duty of loyalty to Food Lion." *Id.* at 519. Here, defendant falsely told plaintiff he was a prospective client to gain entry to his private office, remained after being asked, and specifically denied he worked for defendant while he secretly taped the conversation without plaintiff's knowledge or consent. The holding in *Food Lion* supports plaintiffs' trespass claim here.

In *Desnick v. American Broadcasting Companies, Inc.,* an ABC producer obtained permission from Dr. Desnick to film his offices for a news report after he falsely promised Dr. Desnick the report would be "fair and balanced," contain no "undercover surveillance," or involve "ambush interviews." 44 F.3d 1345, 1348. Subsequently, ABC investigators posed as test patients requesting eye examinations. *Id.* When the news report aired, it alleged Dr. Desnick tampered with equipment to obtain skewed results and recommended unnecessary surgeries. *Id.* at 1348-49. The Seventh Circuit explained, "the test patients entered *offices that were open to anyone* expressing a desire for ophthalmic services and videotaped physicians engaged in professional, not personal, communications with strangers (the testers themselves)." *Id.* at 1352 (emphasis supplied). The court also recognized and cited *Rockwell Graphic Systems, Inc. v. DEV Industries, Inc.,* 925 F.2d 174, 178 (7th Cir. 1991), which held, "if a competitor gained entry to a business firm's premises posing as a customer but in fact hoping to steal the firm's trade secrets" the business owner's consent would be void and the trespasser would be liable. *Id.* Plaintiff Nakell's private law office is not "offices that were open to anyone." *Id.*

In *Medical Laboratory Management v. American Broadcasting Companies, Inc.,* the United States District Court for Arizona held

**KEYZER v. AMERLINK, LTD.**

[173 N.C. App. 284 (2005)]

*Desnick* was not controlling or persuasive authority in the State of Arizona. 30 F. Supp. 2d 1182, 1203 (D. Ariz., 1998) ("[T]he conclusions reached in *Desnick* are not supported by the law in Arizona or the Ninth Circuit . . . If the person consenting to the conduct of another is induced to consent by . . . the other's misrepresentation, the consent is not effective for the unexpected invasion or harm." (quotation omitted)), *aff'd*, 306 F.3d 806 (9th Cir. 2002).

In *Medical Laboratory Management*, an employee of ABC telephoned the plaintiff and misrepresented she was a medical laboratory technician interested in opening a pap smear laboratory in the State of Georgia. 30 F. Supp. 2d at 1185. On that pretext, a meeting was scheduled. *Id.* The employee of ABC and a cameraman met and also toured the laboratory with the plaintiff and discussed costs, turn around time, and laboratory procedures. *Id.* ABC used the information obtained during the tour and meeting for a news report on frequent errors in pap smear testing. *Id.* at 1186.

In *Shiffman v. Empire Blue Cross and Blue Shield*, as here, a learned professional was fraudulently solicited for services. 256 A.D.2d 131, 131, 681 N.Y.S.2d 511, 511 (N.Y.A.D., 1998). The reporter misrepresented her identity and the purpose of her visit. *Id.* The court held, the "implied consent to enter the premises were legally insufficient since consent obtained by misrepresentation or fraud is invalid . . . ." *Id.*

The holdings in *Blackwood, Smith, Medical Laboratory Management,* and *Shiffman* support the viability of plaintiffs' trespass claims. *Blackwood*, 297 N.C. at 167, 254 S.E.2d at 9; *Smith*, 283 N.C. at 660, 197 S.E.2d at 528; *Medical Laboratory Management*, 30 F. Supp. 2d at 1203; *Shiffman*, 256 A.D.2d at 131, 681 N.Y.S.2d at 511. The facts in *Broughton* are easily distinguishable and not controlling to those before us. 161 N.C. App. 20, 588 S.E.2d 20.

Here, defendant Johnson contacted plaintiff Nakell and posed as a potential client. Plaintiff scheduled an appointment for defendant to meet plaintiff at his law office located within his private residence. Defendant obtained consent to enter plaintiff's private office that is not open to the general public and met with him on the pretext and false assertion that defendant was a dissatisfied customer of Amerlink seeking representation. *See Shiffman*, 256 A.D.2d at 131, 681 N.Y.S.2d at 511; *Medical Laboratory Management*, 30 F. Supp. 2d at 1203; *c.f. Blackwood*, 297 N.C. at 167, 254 S.E.2d at 9.

**KEYZER v. AMERLINK, LTD.**

[173 N.C. App. 284 (2005)]

Defendant lied about the identity of his employer and about the purpose of the visit. When plaintiff Nakell directly asked defendant Johnson if he worked for defendant Amerlink, he again lied and answered in the negative. Defendant recorded the entire meeting without plaintiff's knowledge. Defendant's sole purpose of seeking the office visit was an attempt to obtain plaintiff's breach of the non-disclosure agreement so defendant could fraudulently avoid agreed payment thereunder.

Defendant's conduct and assertions were fraudulent and deceitful. Plaintiff's initial and subsequent consent were procured through defendant's trickery and lies. Throughout defendant's entire investigation, he fraudulently gained consent to enter plaintiff's attorney's property, to meet with plaintiff's counsel, and with the intent to lure private information out of plaintiff and his attorney to avoid payment on his mediated settlement agreement. Plaintiff's consent to enter and remain on plaintiff's property was voided when plaintiff's consent was derived from defendant's repeated fraud and deceit. *Blackwood*, 297 N.C. at 167, 254 S.E.2d at 9 (quoting *Smith*, 283 N.C. at 660, 197 S.E.2d at 528). Without consent, plaintiff asserts a viable civil trespass claim. The majority's opinion appears to agree that defendant had no consent to enter or remain on the property, but the majority's opinion does not explain or cite any authority for its assertion that defendant's unlawful and unauthorized entry was not "the kind to support the tort of trespass."

## IV.  Conclusion

I concur with the majority's opinion to dismiss plaintiff's claim against defendants for invasion of privacy. Because plaintiff has asserted a viable civil trespass claim, plaintiff is also entitled to assert unfair and deceptive trade practices and punitive damages claims. *Taha v. Thompson*, 120 N.C. App. 697, 704, 463 S.E.2d 553, 558 (1995) ("Because we find sufficient evidence to submit the trespass . . . to the jury, we conclude it would be error not to submit the factual issues underlying plaintiff's unfair and deceptive trade practices claim as well."), *disc. rev. denied*, 344 N.C. 443, 476 S.E.2d 130 (1996).

Plaintiff's consent to enter and remain on his property was derived by defendant's fraud or deceit and is void. I vote to reverse the trial court's dismissal of plaintiff's civil trespass, unfair and deceptive trade practices, and punitive damages claims. I respectfully dissent.