***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties. The Full Commission affirms the Opinion and Award of Deputy Commissioner Houser and enters the following Opinion and Award:
 *********** ISSUES TO BE DETERMINED
1. Whether or not plaintiff was justified in refusing the first-shift dietary aid position as not being suitable employment.
2. Whether pursuant to the Act and Seagraves v. Austin Co. ofGreensboro, 123 N.C. App. 228, 472 S.E.2d 587 (1996), plaintiff has been disabled and entitled to receive ongoing *Page 2 
total disability compensation from February 23, 2008, her termination date, and continuing through the present, or did she constructively refuse suitable employment.
3. Whether plaintiff is entitled to additional medical compensation as the result of her April 29, 2008, admittedly compensable injury by accident, and if so, whether defendants should continue to direct medical treatment.
4. What is plaintiff's correct average weekly wage and compensation rate.
5. Whether plaintiff's treating physician's opinions were tainted as the result of alleged ex parte communication by an agent of defendants.
6. Whether the actions of the rehabilitation nurses assigned to plaintiff's case were proper.
7. Whether plaintiff is entitled to an award of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1.
 *********** EVIDENTIARY MATTERS
Prior to the hearing before the Deputy Commissioner, plaintiff served a subpoena on Mr. Eugene Nelson seeking to have him testify at the hearing. As part of Mr. Nelson's subpoena, there was a subpoena duces tecum for the deponent to produce "any notes, documents, *Page 3 
calendars, photographs, paper, memorandums, electronic data, or other information generated by you or others, that are in your possession or that have been given to others to hold for you that concerns Sabrina Solomon and/or her employment with United Health Services as well as the insurance adjuster's file." Also prior to the hearing before the Deputy Commissioner, plaintiff served a subpoena on Ms. Jennifer Estridge to have her testify at the hearing. As part of Ms. Estridge's subpoena, there was a subpoena duces tecum for the deponent to produce "any notes, documents, calendars, photographs, paper, memorandums, electronic data, or other information generated by you or others, that are in your possession or that have been given to others to hold for you that concerns Sabrina Solomon and/or her employment with United Health Services as well as the medical case manager's file."
On November 23, 2009, defendants filed a Motion to Quash the subpoena of Mr. Nelson and a Motion to Quash the subpoena of Ms. Estridge. Defendants' motions did not differentiate between the general subpoenas for the witnesses to testify at the hearing and the subpoenas duces tecum. On November 24, 2009, Deputy Commissioner Houser filed an Order quashing the subpoena of Mr. Nelson and an Order quashing the subpoena of Ms. Estridge.
At the hearing on November 30, 2009, plaintiff filed a Motion to Reconsider the November 24, 2009 Orders granting defendants' Motions to Quash the subpoenas of Mr. Nelson and Ms. Estridge. Over defendants' objection, the Deputy Commissioner granted plaintiff's Motion to Reconsider, and defendants did not appeal that Order. Thereafter, the depositions of Mr. Nelson and Ms. Estridge were taken on March 4, 2010.
Plaintiff contends that defendants, by and through these witnesses, violated the Deputy Commissioner's Order made at the November 30, 2009, hearing by not producing their files. Defendants contend that at the hearing, plaintiff merely requested to be allowed to obtain the testimony of these witnesses by deposition, and that no Order was entered overturning the prior Order quashing the subpoenas.
The original Orders of November 24, 2009, addressed not only the request to have the witnesses testify at the hearing, but also the subpoena duces tecum for each. Likewise, the Deputy Commissioner's November 30, 2009, Order addressed not only the request to have the *Page 4 
witnesses testify by post-hearing deposition, but also the subpoenaduces tecum for each. Therefore, the Deputy Commissioner found defendants' position on this issue to be erroneous.
On the issue of spoliation of evidence, the granting of the inference sought by plaintiff that the documents which were improperly not produced would have helped her claim for ongoing indemnity compensation is not mandatory. McLain v. Taco BellCorp., 137 N.C. App. 179, 527 S.E.2d 712, disc. reviewdenied, 352 N.C. 357, 544 S.E.2d 563 (2000).
Based upon the procedural history of this case and evidence of record, the Full Commission declines to grant the inference sought by plaintiff. As such, plaintiff's Motion is DENIED.
 ***********
The Full Commission finds as a fact and concludes as a matter of law the following, which were entered into by the parties as:
 STIPULATIONS
1. Plaintiff-employee is Ms. Sabrina Solomon.
2. Defendant-employer is the N.C. State Veterans Nursing Home a/k/a United Health Services.
3. Defendant-carrier is The Phoenix Insurance with Travelers Insurance Company as the Third-Party Administrator.
4. On all relevant dates, defendant-employer employed three or more employees and was bound by the North Carolina Workers' Compensation Act. An employer-employee relationship existed between defendant-employer and plaintiff employee on or about April 29, 2008, the date of the admittedly compensable injury by accident to plaintiff's head, low back, neck, and right elbow. *Page 5 
5. At the hearing before the Deputy Commissioner, the parties submitted the following:
 a. A Packet of Various Stipulated Exhibits, which was admitted into the record and marked as Stipulated Exhibit (2) and which included the following:
 • Industrial Commission Forms;
 • Industrial Commission Motions and Orders;
 • Medical Records;
 • Plaintiff's Response to Defendants' First Set of Interrogatories and Request for Production of Documents;
 • The North Carolina Employment Security Commission File;
 • Defendants' Response to Plaintiff's First Set of Interrogatories;
 • Correspondence Regarding N.C. Gen. Stat. § 97-30 and Related Employment Records;
 • Employee Wage Information for the period of February 24, 2007, to May 17, 2008;
 • An Archived Time Card;
 • N.C. Gen. Stat. § 30 Benefit Documentation;
 • The File of Ms. Jennifer Estridge from Travelers;
 • The Batch File of Mr. Eugene Nelson;
 • Plaintiff's Employment File;
 • A List of Job Duties;
 • Witness Statements; *Page 6 
 • Transitional Duty Related Documents;
 • A Nurses Aid Job Description and;
 • Temporary Partial Disability Information.
 b. A Packet Containing Additional Industrial Commission Form 22s and Wage Records, which was admitted into the record and marked as Stipulated Exhibit (3);
 c. A Packet of Work Search Records, which was admitted into the record and collectively marked as Stipulated Exhibit (4) and;
 d. A Packet of Pay Records for Other Dietary Technicians, which was admitted into the record and collectively marked as Stipulated Exhibit (5).
6. Also made part of the record are the depositions of Dr. Krishna P. Bhat, Ms. Jennifer Estridge, and Mr. Eugene Nelson.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the alleged injury giving rise to this claim, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. As of the date of the hearing before the Deputy Commissioner, plaintiff was thirty-five (35) years of age, with her date of birth being June 6, 1974.
3. Plaintiff was employed by defendant-employer as a Certified Nursing Assistant, hereinafter referred to as "CNA," and worked on the third shift from 11:00 p.m. to 7:00 a.m. *Page 7 
Plaintiff testified that she worked the third shift due to child care issues and that defendant-employer accommodated this arrangement prior to the incident giving rise to this claim.
4. As a CNA, plaintiff's essential job functions were to provide direct care to residents to improve or maintain their abilities according to a plan of care and to assist them with the activities of daily living, including bathing, grooming, dressing, mobility, feeding, and physical support. Plaintiff was also required to arrange rooms, measure fluid intake and outputs, make beds, care for the linen, clean bedpans and urinals, as well as assisting with admissions and discharges.
5. On April 29, 2008, plaintiff slipped on water on the floor of a patient's room and fell, sustaining injuries to her head, low back, neck, and right elbow.
6. Defendants accepted plaintiff's claim as compensable through the filing of an Industrial Commission Form 60, which lists injuries to her head, low back, neck, and right elbow.
7. Plaintiff first sought medical attention on April 29, 2008, at MedEx Urgent Care upon the referral of defendant-employer. Plaintiff was diagnosed as having sustained a right elbow contusion, a closed head injury, as well as low back and neck pain, for which she was prescribed medication and physical therapy. Additionally, plaintiff was released to return to light-duty work with restrictions of no lifting more than ten (10) pounds and to alternate between sitting and standing. Plaintiff's restrictions were modified on May 2, 2008, to lifting no more than twenty (20) pounds and to alternate between sitting and standing.
8. Defendant-employer was able to accommodate plaintiff's light-duty physical restrictions and she returned to work on the third shift. While working on light duty, plaintiff's duties included, among other tasks, sitting with a patient who had a broken hip to prevent him from getting out of bed and further injuring himself. Plaintiff would also perform tasks that others *Page 8 
usually performed on an as needed basis. Plaintiff later moved to a light-duty laundry aide position. The laundry aide position was not typically available on the third shift, but defendant-employer made an accommodation to allow plaintiff to work in that position on the third shift.
9. While working in the laundry aide position, plaintiff was paid $7.50 per hour, which was less than her average weekly wage on the date of her injury. Therefore, defendants paid plaintiff temporary partial disability compensation for the reduction in her wages.
10. On July 3, 2008, plaintiff began physical therapy at Select Physical Therapy. Additionally, plaintiff continued to treat with MedEx Urgent Care until July 31, 2008, when she was referred to Dr. Krishna Bhat.
11. Prior to her appointment with Dr. Bhat, plaintiff was examined by Dr. Luca Van Tran, a neurologist, on July 23, 2008. Dr. Van Tran diagnosed plaintiff as having sustained soft tissue injuries to the head and neck. Dr. Van Tran was of the opinion that plaintiff did not have any pertinent neurological problems that required further neurological treatment and instead recommended that plaintiff continue conservative treatment with MedEx.
12. On August 11, 2008, plaintiff was first examined by Dr. Bhat, a specialist in physical medicine and rehabilitation. On that date, Dr. Bhat diagnosed plaintiff as having myofascial pain, or muscular pain, in her upper back and lower neck, lumbar degenerative disc disease, and cervicogenic headaches. For plaintiff's conditions, Dr. Bhat prescribed medications, continued her physical therapy, and her light-duty status with the restrictions of no lifting more than twenty (20) pounds, to alternate between sitting and standing, as well as with restricted overhead work, repetitive rotation, and side bending.
13. On October 17, 2008, plaintiff returned to Dr. Bhat and reported increased back pain that radiated into her right leg. Also on that date, plaintiff informed Dr. Bhat that her light-duty *Page 9 
laundry aide position required repetitive bending and lifting throughout the shift. Dr. Bhat noted that plaintiff's work restrictions were not being maintained and specified that "occasional" meant as much as thirty-three percent (33%) of the shift performing any specific activity, which is what he intended to effectuate with the restrictions assigned on August 11, 2008.
14. On December 15, 2008, plaintiff underwent a functional capacity evaluation, hereinafter referred to as "FCE," which demonstrated that she was capable of performing a job requiring a medium level of activity for eight (8) hours a day, forty (40) hours per week. Following the FCE, Dr. Bhat modified plaintiff's work restrictions to permit occasional lifting of as much as fifty (50) pounds, frequent lifting of as much as twenty (20) pounds, occasional repetitive rotating side bending, repetitive stooping, and squatting.
15. On February 11, 2009, Dr. Bhat opined that plaintiff had reached maximum medical improvement and assigned permanent work restrictions of no pushing, pulling, lifting, or carrying more than fifty (50) pounds, occasional pushing, pulling, lifting, or carrying of twenty (20) to fifty (50) pounds, and frequent pushing, pulling, lifting, or carrying of twenty (20) pounds. Plaintiff's restrictions remained unchanged regarding occasional repetitive rotating, side bending, stooping, and squatting, and she was to take rest breaks after standing for more than one hour. In addition, Dr. Bhat assigned a two percent (2%) permanent partial disability rating to plaintiff's back.
16. Dr. Bhat opined that as of February 11, 2009, the CNA duties plaintiff was performing for defendant-employer were within her permanent work restrictions. Additionally, Dr. Bhat testified that plaintiff would have been able to continue working in that capacity subsequent to February 11, 2009. *Page 10 
17. Dr. Bhat has opined to a reasonable degree of medical certainty that plaintiff's ongoing symptoms were caused by her admittedly compensable injury by accident of April 29, 2008.
18. It is defendant-employer's policy that once an injured employee reaches maximum medical improvement, and their physical restrictions become permanent, light or alternative duty ends, and defendant-employer attempts to assign the employee to a suitable permanent position.
19. Pursuant to defendant-employer's policy, after reaching maximum medical improvement, plaintiff was offered a job as a dietary aide. The dietary aide position pays a starting wage of $7.50 per hour.
20. The job description for the dietary aide position was never sent to, or approved by, plaintiff's primary treating physician, Dr. Bhat.
21. Based upon the credible evidence of record, the Full Commission finds that the laundry aide position was suitable employment because at the time plaintiff worked in that job, she was on non-permanent, light-duty work restrictions.
22. Based upon the credible evidence of record, the Full Commission finds that the dietary aide position was not suitable employment given that it was never approved by plaintiff's primary treating physician Dr. Bhat, and is not sufficiently similar in salary to plaintiff's work for defendant-employer as a full-duty CNA. The fact that the dietary aide position is not available on first shift is not a factor in this determination. Accordingly, plaintiff did not unjustifiably refuse suitable employment.
23. On February 22, 2009, plaintiff was terminated by defendant-employer. Defendants have failed to produce sufficient evidence upon which to find that plaintiff was *Page 11 
terminated for causes unrelated to her admittedly compensable April 29, 2008, injury by accident, for which a non-injured employee would have been terminated.
24. Plaintiff has received unemployment compensation following her termination on February 22, 2009.
25. Ms. Jennifer Estridge, a telephonic nurse case manager, was assigned to plaintiff's claim to manage and coordinate her medical treatment. Ms. Estridge has a Bachelor of Science degree in nursing, and is certified as a case manager with the North Carolina Industrial Commission.
26. Ms. Estridge was assigned this claim in June 2008, and continued in that capacity until May 2009. During that period, Ms. Estridge failed to generate Industrial Commission Forms 25N and 25C.
27. Ms. Estridge also failed to complete regular written reports as required by the Industrial Commission Rules for Utilization of Rehabilitation Professionals. These reports are to be a summary of all activities performed on the file, including all communications.
28. Without the proper authority to do so, Ms. Estridge had exparte communications with Dr. Bhat, or his office, as well as Dr. Van Tran and personnel at MedEx Urgent Care.
29. Mr. Eugene Nelson is a claims adjuster for defendant-carrier. Mr. Nelson assigned Ms. Estridge as the nurse case manager on this claim and testified that he knew of the requirement that Industrial Commission Form 25N and Form 25C be generated on all rehabilitation nurse assignments. Mr. Nelson further testified that their internal protocol has the medical case managers file the Form 25N and Form 25C. *Page 12 
30. Despite the ex parte nature of the communications by defendants with physicians involved in treating plaintiff, there is insufficient evidence of record upon which to find that any of the medically related testimony or opinions in this matter was tainted against plaintiff.
31. Given the filing of defendants' Industrial Commission Form 60, the Parsons' presumption applies in this matter, thereby making it defendants' burden to prove that plaintiff's ongoing neurological condition is not causally related to her admittedly compensable April 29, 2008, injury by accident.
32. Based upon the totality of the credible evidence of record, defendants have failed to rebut the Parsons' presumption regarding plaintiff's ongoing neurological condition.
33. Even assuming arguendo that the Parsons' presumption had been rebutted, there is sufficient medical evidence of record upon which to independently find that plaintiff's ongoing neurological condition for which she seeks treatment is the direct and natural result of, and causally related to, her April 29, 2008, admittedly compensable injury by accident.
34. Based upon the totality of the credible vocational and medical evidence of record, and as a result of her admittedly compensable April 29, 2008, injury by accident, plaintiff has been unable to earn any wages in her former position with defendant-employer or in any other employment for the period of February 23, 2009, through the present and continuing.
35. Because plaintiff worked the entire fifty-two (52) weeks prior to her April 29, 2008, injury by accident, method one, as outlined in N.C. Gen. Stat. § 97-2(5), must be used to calculate her average weekly wage. This period does not include days subsequent to April 29, 2008, or prior to April 29, 2007. Plaintiff mistakenly uses the periods of April 30, 2008, to May 3, 2008, and from April 21, 2007, to April 28, 2007, in her calculations. *Page 13 
36. As of April 29, 2008, plaintiff's average weekly wage was $452.73, yielding a compensation rate of $301.84.
37. Plaintiff has requested that she be allowed to treat with Dr. David Jones, a board certified neurosurgeon. Based upon the totality of the credible evidence of record, said request is reasonable, medically and otherwise.
38. There is sufficient evidence of record upon which to find that defendants defended this claim unreasonably such as to entitle plaintiff to the award of sanctions pursuant to N.C. Gen. Stat. § 97-88.1. This finding is based on defendants' failure to comply with Deputy Commissioner Houser's November 30, 2009 Order regarding the documents plaintiff requested pursuant to her subpoena duces tecum to Mr. Nelson, and the subpoena duces tecum to Ms. Estridge, the improperex parte communications between Ms. Estridge and plaintiff's treating physicians, and defendants' failure to comply with the Industrial Commission Rules regarding Rehabilitation Professionals.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On April 29, 2008, plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of her employment with defendant-employer involving her head, neck, back, and right arm. N.C. Gen. Stat. § 97-2(6).
2. Because plaintiff worked the entire fifty-two (52) weeks prior to her April 29, 2008, injury by accident, method one, as outlined in N.C. Gen. Stat. § 97-2(5), must be used to calculate her average weekly wage. This period does not include days subsequent to April 29, 2008, *Page 14 
or prior to April 29, 2007. N.C. Gen. Stat. § 97-2(5);see, e.g., Bond v. Foster Masonry, Inc.,139 N.C. App. 123, 532 S.E.2d 583 (2000). As of April 29, 2008, plaintiff's average weekly wage was $452.73, yielding a compensation rate of $301.84. N.C. Gen. Stat. § 97-2(5).
3. North Carolina law requires that where the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury. Click v. Pilot FreightCarriers, Inc., 300 N.C. 164, 265 S.E. 2d 389 (1980). Additionally, "the entirety of causation evidence" must "meet the reasonable degree of medical certainty standard necessary to establish a causal link." Holley v. ACTS, Inc.,357 N.C. 228, 581 S.E.2d 750 (2003); Young v. HickoryBus. Furn., 353 N.C. 227, 538 S.E.2d 912 (2000). "[A]lthough medical certainty is not required, an expert's `speculation' is insufficient to establish causation." Id. As defendants filed an Industrial Commission Form 60, the Parsons' presumption applies in this matter, thereby making it defendants' burden to prove that plaintiff's ongoing neurological condition is not causally related to her admittedly compensable April 29, 2008, injury by accident.Parsons v. Pantry, Inc.,126 N.C. App. 540, 485 S.E.2d 867 (1997); Perez v. AmericanAirlines, 174 N.C. App. 128, 620 S.E.2d 288 (2005). Based upon the totality of the credible evidence of record, defendants have failed to rebut the Parsons' presumption regarding plaintiff's ongoing head related/neurological condition. Id.
4. Assuming arguendo that the Parsons' presumption had been rebutted, there is sufficient medical evidence of record upon which to independently find that plaintiff's ongoing neurological condition for which she seeks treatment is the direct and natural result of and causally related to her April 29, 2008, admittedly compensable injury by accident. N.C. Gen. Stat. § 97-2(6);Click v. Pilot Freight Carriers, Inc.,300 N.C. 164, 265 S.E. 2d 389 (1980); *Page 15 Holley v. ACTS, Inc., 357 N.C. 228, 581 S.E.2d 750 (2003);Young v. Hickory Bus. Furn.,353 N.C. 227, 538 S.E.2d 912 (2000).
5. Pursuant to Dixon v. City of Durham,128 N.C. App. 501, 495 S.E. 2d 380 (1998), the suitability of an offered position is not limited to a consideration of physical suitability. The "similarity of the wages or salary of the pre-injury employment and the post-injury job offer" must also be considered. Id. at 506. Based upon the credible evidence of record, the Full Commission concludes that the dietary aide position was not suitable employment given that it was never approved by plaintiff's primary treating physician Dr. Bhat, and is not sufficiently similar in salary to plaintiff's work for defendant-employer as a full-duty CNA. N.C. Gen. Stat. § 97-32;Dixon v. City of Durham,128 N.C. App. 501, 495 S.E. 2d 380 (1998). Accordingly, plaintiff did not unjustifiably refuse suitable employment. Id.
6. Defendants have failed to produce sufficient evidence upon which to find that plaintiff was terminated for causes unrelated to her admittedly compensable April 29, 2008, injury by accident, for which a non-injured employee would have been terminated.Seagraves v. Austin Co. of Greensboro,123 N.C. App. 28, 472 S.E.2d 587 (1996).
7. Based upon the totality of the credible vocational and medical evidence of record, and as a result of her admittedly compensable April 29, 2008, injury by accident, plaintiff is entitled to ongoing total disability compensation at the rate of $301.84 per week for the period of February 23, 2009, through the present and continuing until such time as she returns to suitable employment or further Order of the Commission. N.C. Gen. Stat. § 97-29; Russell v. LowesProd. Distrib., 108 N.C. App. 762, 425 S.E.2d 454 (1993).
8. Based upon the totality of the credible vocational and medical evidence of record, and as a result of her admittedly compensable April 29, 2008 injury by accident, plaintiff is entitled *Page 16 
to have defendants pay for all related medical treatment incurred or to be incurred, subject to the provisions of N.C. Gen. Stat. § 97-25.1, including treatment recommended and provided by Dr. David Jones, who is approved as her authorized treating physician, when the medical bills have been approved according to established Industrial Commission procedures. N.C. Gen. Stat. §§ 97-25; 97-25.1.
9. Subject to the provisions of N.C. Gen. Stat. § 97-25.1, plaintiff is entitled to have defendants provide all medical treatment, incurred or to be incurred, necessitated by the April 29, 2008, admittedly compensable injury by accident, when bills for the same have been approved pursuant to Industrial Commission Procedures. N.C. Gen. Stat. §§ 97-2(19); 97-25; 97-25.1.
10. Plaintiff has received unemployment compensation following her termination by defendant-employer on February 22, 2009. Defendants are entitled to a dollar-for-dollar credit against the compensation due plaintiff for the unemployment compensation plaintiff has received. N.C. Gen. Stat. § 97-42.1.
11. Because defendants' defense of this claim was unreasonable and based on stubborn, unfounded litigiousness, plaintiff is entitled to an award of attorney's fees as a sanction based upon a percentage of the accrued disability compensation payable to plaintiff. N.C. Gen. Stat. § 97-88.1; Sparks v. Mountain BreezeRestaurant and Fish House, Inc.,55 N.C. App. 663, 286 S.E.2d 575 (1982); Donnell v. Cone MillsCorp., 60 N.C. App. 338, 299 S.E.2d 436, cert. denied,308 N.C. 190, 302 S.E.2d 243 (1983). This attorney's fee shall not be deducted from the amounts due plaintiff, but instead shall be paid to counsel for plaintiff in addition to those amounts due plaintiff.
 *********** *Page 17 
Based upon the foregoing stipulations, findings of fact, and conclusions of law the Full Commission makes the following:
 AWARD
1. Defendants shall pay to plaintiff ongoing total disability compensation at the rate of $301.84 per week for the period of February 23, 2009, through the present and continuing until such time as she returns to suitable employment or further Order of the Commission. From the amounts having accrued, this compensation shall be paid to plaintiff in a lump sum less any credit defendants may have for plaintiff's receipt of unemployment benefits.
2. As a sanction for unreasonable defense, defendants shall pay plaintiff's attorney a reasonable attorney's fee at the rate of twenty-five percent (25%) of the accrued compensation due plaintiff, in addition to and not deducted from the compensation due plaintiff. That fee will be paid by paying an additional twenty-five percent (25%) of the accrued benefits due plaintiff, that is not reduced by defendants' credit for plaintiff's receipt of unemployment compensation, and shall be paid directly to plaintiff's attorney.
3. A reasonable attorney's fee of twenty-five percent (25%) of the future compensation awarded to plaintiff in paragraph one (1) above, is hereby approved and every fourth (4th) payment due plaintiff shall be paid directly to plaintiff's attorney.
4. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of the compensable injuries for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief, or may tend to lessen the employee's period of disability, including treatment recommended and provided by Dr. David Jones, who is approved as her authorized treating physician, when bills for same have been submitted and *Page 18 
approved by the Industrial Commission, subject to the limitations period of N.C. Gen. Stat. § 97-25.1.
5. Defendants shall pay the costs.
This the 16th day of December, 2010.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/___________________ LINDA CHEATHAM COMMISSIONER *Page 1